[Cite as *State v. Lewis*, 2017-Ohio-7480.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104765**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMALL LEWIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-602693-A

**BEFORE:** Blackmon, P.J., Laster Mays, J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 7, 2017

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Daniel A. Cleary
Brian D. Kraft
Andrew T. Gatti
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶1} Appellant Jamall Lewis ("Lewis") appeals his convictions for aggravated murder, murder, felonious assault, attempted murder, with firearm, repeat violent offender and gang specifications, and having a weapon while under disability. Lewis assigns the following errors for our review:

> I. The trial court erred in entering a conviction which was against the manifest weight of the evidence.
>
> II. The trial court erred in the admission of prior statements of the state's key witness.
>
> III. The trial court erred in determining that the state's rationale for using a peremptory challenge on an African-American member of the jury panel was race-neutral.

{¶2} Having reviewed the record and the pertinent law, we affirm the decision of the trial court.

{¶3} In January 2016, Lewis, Ramel Lee ("Lee"), and Ky'Tric Shropshire ("Shropshire") were indicted in a multicount indictment in connection with the April 15, 2013 shooting that resulted in the death of Regina Neal ("Neal") and injuries to Charles Elder ("Elder"). As is relevant herein, Lewis was charged with aggravated murder, murder, attempted murder, three counts of felonious assault, all containing various one-year and three-year firearm specifications, criminal gang activity specifications, repeat violent offender specifications and a notice of a prior conviction, as well as discharging a firearm near prohibited premises, and having a weapon while under

disability. Lewis pled not guilty and the matter proceeded to a jury trial on June 1, 2016.[1]

{¶4} Elder testified that a number of his friends are members of ATM Jack Boyz gang, but that he is not in a gang. During the evening of April 15, 2013, while Elder and Neal were walking from Neal's home on East 134th Street near Caine Avenue, to a store near Beachwood Avenue, all within an area considered ATM Jack Boyz territory, they were suddenly fired upon. Elder was struck in the leg. Neal was shot in the head and abdomen, and died from her injuries.

{¶5} Elder determined that the shots came from behind them. It was "kind of dark," but when he looked back, he saw a man four or five houses away, wearing a "red hoody that was tied tight, you could only see the nose and the mouth of the person." As Elder's friends, "Diaz" and Jermaine Cottrell, a.k.a. "Mane," arrived in response to the gunfire, Elder observed the man in the red hooded sweatshirt driving by in a small white car. Elder told police that the assailant was short, stocky, with a "big nose and big lips."

{¶6} Elder testified that he "felt like [he] did recognize him" and he believed the assailant was Lewis, a J-Park gang member, who had a prior altercation with Elder's

---

[1]Lewis was tried with Shropshire. Shropshire was convicted of aggravated murder, murder, felonious assault, and having a weapon while under disability. He was sentenced to life imprisonment with parole eligibility after 25 years. His direct appeal is pending in *State v. Shropshire*, 8th Dist. Cuyahoga No. 104775. Lee was tried separately and was sentenced to nine years on all of the specifications, to a total of fifteen years to life imprisonment on the remaining charges. This court affirmed his conviction. *See State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449.

brother. Elder conceded that he may have not immediately given Lewis's name to police, but he testified that in the days or weeks that followed, he provided police with the name of Jamall Lewis as the person he "thought" was a suspect in the shooting. Additionally, Elder listed Lewis's name as a possible suspect on a Victim of Crime Compensation application. Shortly before trial, Elder identified Lewis in a photo array, then again in court.

{¶7} Cleveland police subsequently learned the name of the owner of the vehicle that Elder observed immediately after the shooting, but they excluded him from involvement in the shooting. However, Cleveland Police Detective Tim Entenok ("Det. Entenok") testified that early the next morning, Elder informed police that Jamall Lewis was a suspect. (Tr. 111.) The police also recovered 16 fired bullet shell casings from the area, including .40 caliber, .45 caliber and 9 mm caliber shells, linked to three specific handguns. Using the National Integrated Ballistic Information Network ("NIBIN"), the police linked the .40 shell casings to a Taurus pistol that was seized during an arrest in Bedford Heights. However, the caliber of the pellet recovered from Neal's body could not be determined.

{¶8} By March 2015, S.L. was being detained in the juvenile detention center, pending mandatory bindover for aggravated robbery with a firearm specification, and he decided to cooperate with law enforcement. Cleveland police detectives interviewed him twice before obtaining a proffer statement on March 6, 2015. S.L. stated that at the time of the proffer, detectives did not know that he would address this matter, and that he,

and not the police, initiated discussion of this shooting. Before the proffer, the state had not offered him any plea agreement.

{¶9} S.L. admitted that prior to his proffer, he was facing mandatory bindover and indictment for aggravated robbery with firearm and gang activity specifications, as well as a charge of having a weapon while under disability. As a result of his proffer, the state agreed that S.L. would serve ten months in a juvenile facility for his offenses, so "long as he came in and testified truthfully" against Lee, Shropshire, and Lewis.

{¶10} S.L. testified that he is a member of the J-Park gang, and that ATM Jack Boyz gang members are their enemies. On the afternoon of April 15, 2013, while S.L. was walking past the Lee Harvard Plaza, ATM Jack Boyz gang member "Mane" shot at him. S.L. met with other J-Park members Lewis, Shropshire, and Lee at Shropshire's house, and told them about the shooting so that they "would fight or shoot at them" in retaliation. After nightfall, the group assembled in a silver SUV owned by a friend of Shropshire, then Lee drove them to East 134th Street between Caine Avenue and Beachwood Avenue, looking for Mane. Lewis was armed with a .40 caliber semiautomatic weapon, Shropshire had a .45 caliber semiautomatic weapon, and Lee and S.L. were unarmed. S.L. also testified that Lee was wearing a red hooded sweatshirt, Lewis was wearing a gray hooded sweatshirt, and Shropshire was wearing a blue jacket.

{¶11} According to S.L., as they circled the block, they noticed a group of people standing outside. They parked a few streets over so they "could get ready to do something to the ATM Jack Boys." Lee parked about a block away and the J-Park

members quickly discussed that Lewis and Shropshire would "[do the] shooting" and Lee and S.L. would remain in the car. Lewis and Shropshire then left the vehicle, each with a weapon. A few minutes later, S.L. heard ten to twenty gunshots, then Lewis and Shropshire ran back to the car with their weapons in their hands. Lee drove the group back to Shropshire's house. The next day, S.L. learned from social media that a man and woman were hit during the shooting. After that, Lewis and Shropshire got rid of the weapons. S.L. admitted that he later obtained the .45 firearm that was "going around" the neighborhood.

{¶12} Cleveland Police Det. Colin Ginley ("Det. Ginley") testified that he interviewed S.L. twice before the proffer. According to Det. Ginley, the police do not "guarantee anything but we're going to give this information to the detectives and * * * see if it's truthful and see if it can be corroborated [then prosecutors will] consider it but nothing is guaranteed." If truthful testimony is then provided, the information provided in the proffer cannot be used against the maker of the statement.

{¶13} Det. Ginley testified regarding the substance of S.L.'s proffer, including the earlier shooting and the planned retaliatory shooting. Det. Ginley also testified that he confirmed that there was a report of gunshots earlier in the day in the area of Lee and Harvard, and that S.L. correctly identified the caliber of the weapons used during the shooting later that night.

{¶14} After the presentation of the state's case, the trial court denied Lewis's motion for acquittal. Lewis was subsequently acquitted of the charge of discharging a

firearm near prohibited premises, but was convicted of all remaining charges and specifications. He was sentenced to 44 years-to-life imprisonment, with parole eligibility after 30 years.

## Weight of the Evidence Supporting a Conviction

{¶15} In the first assigned error, Lewis argues that his conviction is against the manifest weight of the evidence because Elder and S.L. are not credible and there were discrepancies in their accounts of the shooting.

{¶16} In examining a challenge to the manifest weight of the evidence supporting a conviction, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶17} In conducting its review, the court remains mindful that the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Moreover, discrepancies in a witness' testimony or between his or her testimony and that of others does not necessarily preclude the jury from believing that

testimony.  *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 37.  The *Rudd* court explained:

> [A] conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent or contradictory testimony.  *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11; *see also State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37 ("'While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'"), quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, *7 (May 28, 1996).  The decision whether, and to what extent, to believe the testimony of a particular witness is "within the peculiar competence of the factfinder, who has seen and heard the witness."  *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54.

*Id.* at ¶ 72.

**{¶18}**  In this matter, Lewis insists that Elder equivocated on the identity of the shooter and did not immediately identify him as a perpetrator.  However, Elder testified that in the days or weeks that followed the shooting, he "gave [police] a name" and description.  Additionally, about a month after the shooting, he listed Lewis's name on a

Victim of Crime Compensation form as the person he "thought" was the shooter. Later, in a photo array and at trial, he identified Lewis as the assailant. Reviewing the record as a whole, the jury reasonably could have concluded that Elder's identification of Lewis was consistent, credible, and reliable.

{¶19} Additionally, S.L. testified regarding the incident leading up to the shooting, and the planning of a retaliatory shooting. According to S.L.'s testimony, the group drove to ATM Jack Boyz territory and observed individuals on East 134th Street. The group parked nearby and planned that Lewis and Shropshire would shoot the individuals on East 134th Street, and S.L. and Lee would remain in the SUV. S.L. also testified that he observed Lewis and Shropshire leave the vehicle with weapons. A few minutes later, he heard gunshots, and the men then ran back to the vehicle. The next day, he learned the identities of the victims. S.L. was then extensively cross-examined regarding the leniency of his plea agreement, his subsequent possession of the .45 caliber weapon used in the shooting, the clothing worn by the J-Park members at the time of the shooting, and the type of vehicle used in the shooting. Additionally, the jury was also cautioned, under R.C. 2923.03(D) that because S.L. was an accomplice to the shooting, they were required to view his testimony with "grave suspicion." However, he remained consistent that the shooting was the result of the earlier altercation with Mane and that Lewis and Shropshire were the shooters. His claims regarding the earlier shooting and the caliber of the weapons were corroborated. Therefore, after reviewing the record as a whole, we conclude that although there were discrepancies in portions of S.L.'s

testimony, the jury reasonably could have concluded that this identification was credible and reliable. In weighing the evidence and all reasonable inferences, and considering the credibility of witnesses and resolving conflicts in the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Lewis in this matter.

**{¶20}** Moreover, although Elder's testimony and S.L.'s testimony differed on several points, including the color of the shooter's clothing and the color and model of the vehicle, following our own review of the record, we cannot say that the jurors acted unreasonably in finding their testimony regarding Lewis's involvement to be credible. *Rudd* at ¶ 73.

**{¶21}** From all of the foregoing, we cannot say that the convictions are against the manifest weight of the evidence. This assigned error is without merit.

### Witness's Prior Statement

**{¶22}** In the second assigned error, Lewis asserts that the trial court erred in concluding that Det. Ginley's testimony regarding the content of S.L.'s proffer of evidence was admissible as a prior consistent statement. Lewis argues that under Evid.R. 801(D)(1)(b), such statement must be made before an alleged motive to fabricate, whereas in this instance, the statement was made after S.L. was charged with delinquency in connection with an aggravated robbery and was motivated to avoid a bindover and imprisonment.

**{¶23}** Evid.R. 801(D)(1)(b) provides:

(D)   Statements which are not hearsay.   A statement is not hearsay if:

(1)   Prior statement by witness.   The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * *

(b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence of motive[.]

**{¶24}**   Under this rule, a declarant's prior consistent statement is not hearsay if (1) the declarant testifies at trial and is subject to cross-examination, (2) the statement is consistent with her prior testimony, and (3) it is offered to rebut an express or implied charge of recent fabrication or improper motive.   *See State v. Nichols*, 85 Ohio App.3d 65, 70, 619 N.E.2d 80 (4th Dist.1993); *State v. Smith*, 34 Ohio App.3d 180, 191, 517 N.E.2d 933 (5th Dist.1986); *State v. Pritchard*, 8th Dist. Cuyahoga No. 78497, 2001 Ohio App. LEXIS 3400 (Aug. 2, 2001).

**{¶25}**   In *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, the Ohio Supreme Court considered a similar matter.   In that case, co-defendant Walker entered into a plea agreement that allowed him to plead guilty to lesser charges in exchange for his truthful testimony against Lang.   In Lang's opening statement, the defense argued that the state would present "the statements of a person * * * with an interest in the case," and "implied that Walker had a motive to lie because of the favorable terms of his pretrial agreement."   *Id*. at ¶ 108-109. The Ohio Supreme Court concluded that these statements constituted "an allegation of recent fabrication that

allowed the state to introduce Walker's prior consistent statements to rehabilitate his testimony." *Id.* at ¶ 110. The *Lang* court explained:

> Defense counsel's opening statement implied that Walker had had a motive to lie because of the favorable terms of his pretrial agreement. This was an allegation of recent fabrication or improper influence that allowed the state to introduce Walker's prior consistent statements to rehabilitate his testimony. *See State v. Wolff*, 7th Dist. No. 07 MA 166, 2009-Ohio-2897, ¶ 78 (allegations of recent fabrication during opening statement provided grounds for admitting prior consistent statement).
>
> Furthermore, Walker had made the statements at issue *before* he entered into his pretrial agreement. *See State v. Howe* (Sept. 30, 1994), 2d Dist. App. No. 13969, 1994 Ohio App. LEXIS 4352, 1994 WL 527612, *9 (prior consistent statement made before an offer of leniency admissible following a defense allegation that the offer established a motive to falsify); *State v. Mullins* (1986), 34 Ohio App.3d 192, 197, 517 N.E.2d 945. Thus, no error, plain or otherwise, occurred when the trial court admitted Walker's prior consistent statements. (Emphasis sic.)

*Id.* at ¶ 110-111.

**{¶26}** In this case, defendant's trial attorney cross-examined S.L. as follows:

Q. So you've got all these problems, all this trouble developing for you at that point, and you make a decision, right?

A. Yes.

Q. With the assistance of your attorney, you reach out to the prosecutor's office and you offer to give them information, correct?

A. Yes.

Q. There's a requirement that goes with this offer of information that you're going to have to do exactly what it is you're doing right now, correct?

A. Yes.

Q. And not only are you going to sit in that seat and testify, but you're going to testify truthfully, correct?

A. Yes.

Q. And consistently with whatever it is you tell them in that statement you gave on March 6th, 2015, correct?

A. Yes.

Q. And the deal that you cut is absolutely dependant upon them being satisfied that you lived up to your end of the bargain, correct?

A. Yes.

* * *

Q. [Y]ou're pretty motivated to give this group of people right here exactly what it is they want in order to make sure that you maintain that deal because you're still hanging out there a little bit, correct?

A. Right.

**{¶27}** The trial court subsequently ruled that the proffer statement was admissible as a prior consistent statement. Applying *Lang*, we likewise find no abuse of discretion because it involves similar allegations of recent fabrication. Moreover, the record demonstrates that S.L. brought up this matter to police during the pendency of another investigation. S.L. then provided information about this matter before he entered into his pretrial agreement, so it was made before an offer of leniency.

**{¶28}** Additionally, we note that Det. Ginley's testimony contains repeated references of what S.L. "said," "talked about," "brought up," and "spoke" about, so he clearly indicated that he was repeating S.L.'s statements. Therefore, we find this testimony to be cumulative to S.L.'s own trial testimony, so it is doubtful that it deprived

Lewis of a fair trial. *Accord State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 79.

{¶29} This assigned error is without merit.

### *Batson* Claim

{¶30} In the third assigned error, Lewis asserts that the trial court erred in accepting the state's rationale for using a peremptory challenge to dismiss an African-American jury panel member.

{¶31} In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution. *Id.* at 82. The *Batson* court set forth a three-step procedure for determining whether a peremptory strike violates equal protection. First, the opponent of the peremptory strike must make a prima facie case of racial discrimination, demonstrating that members of a recognized racial group were peremptorily challenged, and the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors because of their race. *Id.* at 96. Second, if the trial court finds that the opponent has set forth a prima facie case, then the proponent of the strike must come forward with a racially neutral explanation for

the strike. *Id*. at 97-98. Finally, if the proponent puts forth a racially neutral explanation, the trial court must decide, based on all the circumstances, whether the opponent has proven purposeful racial discrimination. *Id.* This requires the court to "examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. However, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).

**{¶32}** A trial court's finding of no discriminatory intent will not be reversed on appeal unless it was clearly erroneous. *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992), following *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). This deferential standard arises from the fact that the third step of the *Batson* inquiry turns largely on the trial court's evaluation of credibility. *See State v. Herring*, 94 Ohio St.3d 246, 257, 2002-Ohio-796, 762 N.E.2d 940, citing *Batson* at 98.

**{¶33}** In this matter, the defense made a *Batson* challenge after the state used a peremptory strike to strike a young African-American male who worked in retail. The state then explained that "he is close in age to the age of these defendants * * * and he's from Cleveland Heights, which from past unfavorable jury verdicts" led him to conclude that the juror would "tend to side more with the defense." The defense countered that a young Caucasian female college graduate was not stricken and that "Cleveland Heights is

a completely fair and neutral territory." The court found the state's explanation to be sufficient, stating:

> [I]t's not that there has to be a pattern that has been expressed. It could be made on the first. I believe he's the first African-American the State is excusing here and they state it's because he's of similar age of the defendant, not based solely on race. There's plenty of other African-Americans on this jury. And the record will reflect that the first two causal challenges were made against African-American jurors, * * * [which] were initiated by the defense in this case.
>
> I believe the State satisfied their burden and I'll overrule the *Batson* challenge.

**{¶34}** In evaluating the *Batson* challenge, we begin by noting that in *State v. Pennington*, 8th Dist. Cuyahoga No. 78878, 2001 Ohio App. LEXIS 4888 (Nov. 1, 2001), this court upheld a peremptory strike used to excuse a male African-American juror where the stated reason was that the juror was the same age as the defendant.

**{¶35}** Turning to the issue of the juror's city of residence, we note that in *Brown v. Grounds*, N.D. Cal. No. 12-CV-01714, 2014 LEXIS 114795 (Aug. 18, 2014), the district court considered and reviewed a similar *Batson* challenge following a prosecutor's peremptory challenge to prospective juror who lived in Berkeley, California, which, according to the prosecutor, is "probably the most liberal city in the United States." The juror was also politically active. The trial court found no *Batson* violation. In addressing the juror's residence in Berkeley, the trial court observed that even if the peremptory strike was based solely on her Berkeley residence, "that would be a race-neutral reason." *Id*. The district court, reiterating the analysis applied in the state appellate court, found no *Batson* violation because the defendants did not "contend

that residence in Berkeley, and involvement in the politics of that city, are a proxy for race, and nothing we are aware of would support such an assumption." *Id.*, applying *People v. Brown*, 1st Dist., Division Four Case No. A118569, 2011 Cal. App. Unpub. LEXIS 2392 (Mar. 30, 2011).

**{¶36}** In *United States v. Bishop,* 959 F.2d 820 (9th Cir.1992), the court considered a prosecutor's peremptory challenge of an African-American welfare eligibility worker living in Compton, California. The prosecutor explained that he believed that "an eligibility worker living in Compton is likely to take the side of those who are having a tough time, aren't upper middle class, and probably believes that police in Compton in South Central L.A. pick on black people [and see] police activity as more intrusive[.]" *Id.* at 822. The court concluded that a *Batson* violation had occurred, but it also noted as follows:

> This is not to say that residence never can constitute a legitimate reason for excluding a juror, even after a prima facie showing of intentional discrimination has been made. On the contrary: What matters is not whether but how residence is used.

*Id.* at 826. *Accord People v. Stevenson*, 1st Dist., Division Two Case No. A121825, 2010 Cal. App. Unpub. LEXIS 1499 (Mar. 2, 2010) (peremptory strike upheld where dismissal of early education teacher based on her "sociology type background, common liberal type background" and residence in San Francisco and Ventura County, which the prosecutor believed are "liberal" areas).

**{¶37}** Applying the foregoing, we hold that the prosecuting attorney could put forth residence as a racially neutral basis for the peremptory challenge, so long as it is not actually a pretext or surrogate for racial discrimination. In this matter, there is no basis in the record upon which to conclude that that prohibition was violated herein. Moreover, in light of that racially neutral explanation, and the absence of purposeful racial discrimination, the trial court's determination that there was no discriminatory intent is not clearly erroneous.

**{¶38}** Finally, although Lewis also challenges the trial court's statement that there are "plenty of African-Americans on the panel," the record indicates that the court did not impermissibly require a pattern before finding discriminatory motive, but was instead noting that the prosecutor had not used any peremptory challenges to strike other African-Americans, a factor that a trial judge may take as an indication of nondiscriminatory motive. *See, e.g., United States v. Lane*, 866 F.2d 103, 106 (4th Cir.1989) ("the fact that two black jurors were seated on Lane's jury and * * * prosecutor exercised only one of his three peremptory challenges tends to negate a motive to discriminate").

**{¶39}** Following a thorough review of the record, we cannot say that the trial court's decision finding lack of discriminatory intent was clearly erroneous. The assigned error is without merit.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
LARRY A. JONES, SR., J., CONCUR