**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-037**

**Filing Date: May 31, 2019**

**No. A-1-CA-35462**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAVIER DORADO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
**Fernando R. Macias, District Judge**

Certiorari Denied, July 2, 2019, No. S-1-SC-37712. Released for Publication July 23, 2019.

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

**{1}** A jury convicted Defendant Javier Dorado of assault on a peace officer and disorderly conduct. On appeal, Defendant argues that the State exercised its peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and his constitutional rights. Detecting no violation, we affirm.

**BACKGROUND**

**{2}**     Defendant was charged with one count of assault upon a peace officer, contrary to NMSA 1978, Section 30-22-21 (1971), and one count of disorderly conduct, contrary to NMSA 1978, Section 30-20-1(A) (1967). The State was allowed three peremptory challenges and exercised them to strike Potential Jurors Five, Fifteen, and Eighteen—all persons with Hispanic surnames. *See* Rule 5-606(D)(1)(c) NMRA (providing in relevant part that "the state shall be allowed three (3) challenges"). After the State used its third strike on Potential Juror Eighteen, Defendant's counsel asked for a reason for the strike. The district court responded to the question, stating, "Well, let me see. Let me see if there is a basis for your request. Okay. [The State used one strike on Potential Juror Five]. They used another one on [Potential Jurors Fifteen and Eighteen]. Two Hispanic males, one Hispanic female." The court told the State it could "address any of the three."

**{3}**     In response, one prosecutor said the State struck Potential Juror Fifteen because "I just didn't like his general demeanor. It didn't appear to be favorable to the State. Oftentimes we just go off the instinct based on body language, and that's why I [asked that Potential Juror Fifteen be stricken]." The State said it struck Potential Juror Eighteen because "he is a young male from Anthony. And while he did not make any—he did not say that he knew [D]efendant, he is from the same area." The State said it struck Potential Juror Five because she was younger, around Defendant's age, and because she is from Anthony.

**{4}**     The district court observed that the majority of the jury panel at that point was Hispanic and concluded that the peremptory strikes had not been used improperly, to which Defendant's attorney replied, "Yes, your Honor" without raising further objection or argument. Of the thirteen jury members finally selected, seven were Hispanic. The jury found Defendant guilty of both charges.

**DISCUSSION**

**{5}**     "It is well established that the [s]tate may not, during the jury selection process, use its peremptory challenges to exclude otherwise unbiased and well-qualified individuals solely on the basis of their race." *State v. Martinez*, 2002-NMCA-036, ¶ 9, 131 N.M. 746, 42 P.3d 851. "Such invidious discrimination violates the Equal Protection Clause of the United States Constitution and causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process." *State v. Salas*, 2010-NMSC-028, ¶ 30, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted); *see* U.S. Const. amend. XIV, § 1; N.M. Const. art. II, §§ 14, 18.[1] To evaluate whether peremptory challenges have been exercised in a discriminatory manner, our courts have adopted and apply a three-part

---

1 Defendant does not argue that the New Mexico Constitution provides broader protection against allegedly discriminatory peremptory challenges than the United States Constitution, nor do we address this question here.

test based on the United States Supreme Court's decisions in *Batson* and *Purkett v. Elem*, 514 U.S. 765 (1995). Our Supreme Court in *Salas* stated:

> First, the opponent of a peremptory challenge bears the burden to establish a prima facie case indicating that the peremptory challenge has been exercised in a discriminatory way (step one). To make a prima facie showing, a party must prove that (1) a peremptory challenge was used to remove a member of a protected group from the jury panel, and (2) the facts and other related circumstances raise an inference that the individual was excluded solely on the basis of his or her membership in a protected group.
>
> If the opponent of the peremptory challenge successfully makes a prima facie showing, then the burden shifts to the proponent of the challenge to come forward with a race or gender-neutral explanation (step two). The second step of this process does not demand an explanation that is persuasive, or even plausible. Rather, the issue is the facial validity of the proffered explanation. Unless a discriminatory intent is inherent in the party's explanation, the reason offered will be deemed race or gender-neutral. If a race or gender-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial or gender discrimination. The ultimate burden of persuasion regarding racial or gender motivation rests with, and never shifts from, the opponent of the strike.

*Salas*, 2010-NMSC-028, ¶¶ 31-32 (alterations, internal quotation marks, and citations omitted).

**{6}**      "We review the trial court's factual findings regarding a *Batson* challenge using a deferential standard of review, as it is the responsibility of the trial court to (1) evaluate the sincerity of both parties, (2) rely on its own observations of the challenged jurors, and (3) draw on its experience in supervising voir dire." *Salas*, 2010-NMSC-028, ¶ 33 (alteration, internal quotation marks, and citations omitted). "However, we are not required to defer to the district court regarding whether a stated reason for a challenge is constitutionally adequate; therefore, we apply a de novo standard of review to the ultimate question of constitutionality." *State v. Bailey*, 2008-NMCA-084, ¶ 15, 144 N.M. 279, 186 P.3d 908.

## 1.      Defendant Made a Prima Facie Case of Discrimination

**{7}**      The State argues that Defendant did not make a prima facie case for purposes of step one of the *Batson* analysis. Accordingly, we consider whether Defendant proved "(1) a peremptory challenge was used to remove a member of a protected group from the jury panel, and (2) the facts and other related circumstances raise an inference that the individual was excluded solely on the basis of his or her membership in a protected group." *Salas*, 2010-NMSC-028, ¶ 31. The State used all three of its peremptory strikes

against prospective jurors with Hispanic surnames. It is well settled that "Hispanics are a cognizable group under a *Batson* challenge." *Bustos v. City of Clovis*, 2016-NMCA-018, ¶ 33, 365 P.3d 67. In *Martinez*, we held that the "the prosecution's use of all three of its peremptory challenges against Hispanics created an inference of discrimination sufficient to support a prima facie case." 2002-NMCA-036, ¶ 30. Likewise, in *Bailey*, we stated that by asking if the state had a legitimate, non-discriminatory reason for its challenges, the district court "implicitly found that [the d]efendant had made a prima facie showing that the [s]tate's challenges were racially motivated." 2008-NMCA-084, ¶ 17; *see Bustos*, 2016-NMCA-018, ¶ 33 (same). Under the circumstances here, we agree with the district court that Defendant established a prima facie case of discriminatory conduct under the first step of the *Batson* analysis.

## 2.    The State's Reasons Were Facially Race-Neutral

**{8}**    Although Defendant argues that "the error in this matter occurred with respect to the third step," he also asks us to "hold that the State . . . failed to meet its burden in the second step of the [*Batson* analysis]." In particular, Defendant argues that the State "failed to provide a satisfactory race-neutral basis for exercising peremptory strikes against [Potential Juror Five] and [Potential Juror Eighteen] based on their address being in Anthony[,]" and that body language is an unsatisfactory explanation for striking Potential Juror Fifteen. The only inquiry at step two is the "facial validity of the proffered explanation," an issue determined on the basis of whether "a discriminatory intent is inherent" in the explanation. *Salas*, 2010-NMSC-028, ¶ 32 (internal quotation marks and citation omitted). The State's explanation does not have to be "persuasive, or even plausible[,]" *id.* (internal quotation marks and citation omitted), but instead "must be sufficiently specific to allow the party challenging the strike to exercise its right to refute the stated reason or otherwise prove purposeful discrimination." *Bustos*, 2016-NMCA-018, ¶ 41 (internal quotation marks and citation omitted).

**{9}**    Turning first to Potential Jurors Five and Eighteen, we address whether the State's reasons for striking these potential jurors—residence and age—were race-neutral or inherently discriminatory. New Mexico has not addressed the question of whether the combination of age and residence is a facially race-neutral reason for exercising a peremptory strike. Other jurisdictions, however, have held that the combination is facially race neutral. *See Higginbotham v. State*, 428 S.E.2d 592, 593-94 (Ga. Ct. App. 1993) (affirming exclusion of veniremember "who lived in the same general area as appellant and was of approximately the same age as he" because "[o]bviously, possible affinity between a prospective juror and the very defendant on trial can constitute a neutral and non-racial explanation for the employment of a peremptory strike. . . . [and i]t was not required that the [s]tate prove that the prospective juror and appellant were personally acquainted" (citations omitted), *abrogated on other grounds as recognized by King v. State*, 447 S.E.2d 645, 650 (Ga. Ct. App. 1994); *People v. Smith*, 630 N.E.2d 1068, 1085 (Ill. App. Ct. 1994) (affirming exclusion of a veniremember "because of her age and because she lived on the south side of the city, where the crime occurred" as race-neutral); *State v. Lewis*, 2017-Ohio-7480, 96 N.E.3d 1203, at ¶ 33 (affirming peremptory strike when the state explained the strike based on

the veniremember being "close in age to the age of these defendants" and being from a neighborhood that, based on the prosecutor's prior experience, tended to favor the defense (internal quotation marks and citation omitted)); *State v. Garris*, 714 S.E.2d 888, 898 (S.C. Ct. App. 2011) (affirming peremptory strike of juror when the stated reason was "because [the potential juror] was close in age to [the defendant] and was from [the same city as the defendant]; therefore, the solicitor assumed that the juror and [the defendant] went to school together").

**{10}** Here, the State exercised peremptory strikes to remove Potential Jurors Five and Eighteen because they were close in age to Defendant and lived in the same small city as Defendant. Based on the prosecutor's statement to the district court—"while [Potential Juror Eighteen] did not say he knew . . . [D]efendant, he is from the same area"—the State expressed some concern that these potential jurors might know Defendant or have an affinity toward him. The State argues on appeal that "it is reasonable to infer that similarly aged people in such a small town may have gone to the same small school—and so might have some familiarity or connection—even if there was no 'personal or professional relationship' that would require disclosure during voir dire." We agree based on these facts that the State's reason for striking these jurors was facially race-neutral and not inherently prejudicial. *See, e.g.*, *Higginbotham*, 428 S.E.2d at 594 ("We cannot condemn the prosecutor's reluctance to gamble on the significance of the proximity of residence and nearness in age." (alteration, internal quotation marks, and citation omitted)).

**{11}** The State's justification here, based on its overarching concern that potential jurors may have some affiliation with Defendant, distinguishes this case from those cited by Defendant in which veniremembers' places of residence were used as a surrogate for racial stereotypes and socioeconomic status. In *United States v. Bishop*, 959 F.2d 820 (9th Cir. 1992), *overruled on other grounds by United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010), for example, the court held that the prosecutor's strikes based on the veniremember's address in Compton ultimately "reflected and conveyed deeply ingrained and pernicious stereotypes" because the prosecutor's justification for the strikes conveyed an assumption that members of the community shared collective experiences of violence and feelings regarding the police based on their race and socioeconomic status. *Bishop*, 959 F.2d at 822, 825. Similarly, in *Ex Parte Bird*, 594 So. 2d 676, 682-83 (Ala. 1991), the court determined that the prosecutor's strike based on a veniremember's street address was not an acceptable race-neutral reason because the prosecutor had not asked the veniemember any questions on voir dire, the allegation that the veniremember lived in a "high crime" area failed to demonstrate any relevance to the case, and may also "serve to eliminate from jury service those individuals living at the lower end of the socioeconomic scale." *Id.* at 682. In these cases, the prosecutors' use of peremptory strikes based on address were held invalid because they sanctioned underlying, discriminatory purposes founded upon the characteristics and assumed beliefs of the communities in which the veniremembers lived. The prosecutor's strikes in this case related to concerns of affinity and were relevant to the specific facts of this case, and consequently, do not demonstrate discriminatory intent similar to *Bishop* and *Ex Parte Bird*.

**{12}** Turning next to Potential Juror Fifteen, the State's explanation for striking this juror was based on his body language and demeanor. Our Supreme Court has held that body language is a facially neutral reason for a peremptory strike. *See State v. Begay*, 1998-NMSC-029, ¶¶ 13, 15, 125 N.M. 541, 964 P.2d 102. In *Begay*, the state explained that it exercised a peremptory strike against a Native American veniremenber "because she was not very responsive on the jury questionnaire and had displayed unfavorable body language." *Id.* ¶ 13. Our Supreme Court found no error where the district court accepted this as facially valid. *Id.* ¶ 15. Similarly, in *State v. Jones*, 1997-NMSC-016, ¶ 4, 123 N.M. 73, 934 P.2d 267, our Supreme Court concluded that the district court did not err in ruling that the state's use of a peremptory strike against a prospective juror for "failure to make eye contact and lack of assertiveness" was racially neutral, *id.* ¶ 5, although noting that "subjective judgments . . . are particularly susceptible to the kind of abuse prohibited by *Batson*[.]" *Id.* ¶ 4 (internal quotations marks and citation omitted). The *Jones* court observed that "[m]any of the judgments made by counsel in picking a jury are purely intuitive and based upon inarticulable factors. Therefore, while subjective considerations might not be susceptible to objective rebuttal or verification, . . . they are permitted because of the inherent nature of peremptory challenges, with the understanding that ultimate *Batson* findings largely will turn on evaluation of credibility of counsel's explanations." *Id.* ¶ 4 (alterations, internal quotations marks, and citations omitted). In light of *Begay* and *Jones*, the State's explanation that it exercised the strike against Potential Juror Fifteen based on body language and demeanor is not inherently discriminatory. Because the State's reasons for challenging these jurors were racially neutral and specific, we see no error in the second step of the *Batson* analysis.

**3.      Defendant Failed to Show That the State's Challenges Were Purposefully Discriminatory**

**{13}** Because we hold that the State came forward with facially race-neutral reasons for its peremptory strikes, we move on to the third step of the *Batson* analysis. "A peremptory challenge that is found to be valid on its face stands unless the defendant comes forward with a refutation of the stated reason—e.g., by challenging its factual basis—or proof of purposeful discrimination by the prosecutor." *Begay*, 1998-NMSC-029, ¶ 14. Where the defendant does not "come forward with evidence showing the prosecutor's explanation was without basis in fact or that the prosecutor purposefully discriminated against the juror based on race[,]" a district court does not err in finding that a peremptory challenge is valid and not discriminatory. *Id.*; *see State v. Chavez*, 2009-NMCA-089, ¶ 5, 146 N.M. 729, 214 P.3d 794 ("Insofar as [the d]efendant failed to demonstrate the prosecutor's explanation was without basis in fact or that the prosecutor purposefully discriminated against the juror based on race, we uphold the district court's ruling.").

**{14}** While we have recognized several ways in which a defendant can show purposeful discrimination,[2] in this case Defendant's counsel did not challenge the

---

2 *See, e.g., State v. Wilson*, 1994-NMSC-009, ¶ 28, 116 N.M. 793, 867 P.2d 1175 (stating that purposeful discrimination may be shown based on "the extent of voir dire of the excluded jurors, whether the explanation is related to the particular case, and whether a past pattern of challenges against members of a particular racial

prosecutor's explanations or otherwise make any argument or showing that the State purposefully discriminated in its use of peremptory strikes. *See Begay*, 1998-NMSC-029, ¶ 15 (upholding the district court's ruling that the state's peremptory challenge was proper where "the prosecutor's explanation was accepted by the [district] court as facially valid[,] . . . [and the d]efendant's counsel neither challenged the prosecutor's professed reason for striking [the prospective juror] nor otherwise showed that the prosecutor intentionally discriminated"). The district court informed counsel for both sides that it did not believe there was a basis for Defendant's challenge to the State's peremptory strikes, to which Defendant's attorney responded, "Yes, your honor." Under these circumstances, and given Defendant's failure to carry his burden of proving purposeful discrimination under *Batson*, the district court did not err in ruling that the State's peremptory challenges were proper.

**CONCLUSION**

**{15}** For the foregoing reasons, we affirm.

**{16}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JENNIFER L. ATTREP, Judge**

---

group exists"); *Bustos*, 2016-NMCA-018, ¶ 49 (concluding, in light of total selection process, the defendants' challenges established a "pattern of conduct and a motive to keep Hispanics off of the jury"); *State v. Guzman*, 1994-NMCA-149, ¶ 19, 119 N.M. 190, 889 P.2d 225 (finding a *Batson* violation where the same factors that were identified to strike Hispanics were not applied to strike Anglos); *State v. Goode*, 1988-NMCA-044, ¶ 14, 107 N.M. 298, 756 P.2d 578 (stating that a prosecutor's proposed reason for striking a juror may also be pretextual when the prosecutor strikes jurors for a reason that does not appear to be related to the case).