[Cite as *State v. Marshall*, 2021-Ohio-4434.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                 :

    Plaintiff-Appellee,                 :

                                     No. 109633

    v.                                        :

JUANITO MARSHALL,                             :

    Defendant-Appellant.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 16, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-635603

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eben O. McNair, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Juanito Marshall ("Marshall") appeals his convictions for multiple counts of rape and other charges after a jury trial. For the following reasons, we affirm.

## Factual and Procedural History

{¶ 2} On November 8, 2018, then 16-year-old K.H. revealed that she had been raped when she was seven. She and her mother, C.E., got into an argument, and K.H. yelled that her mother did not care about her and did not know she had been raped in the past. K.H. told C.E. that Marshall was the rapist. C.E. immediately called Marshall, and then her sister, T.T. Marshall and T.T. had been in a relationship years ago and share a daughter, Al.M. K.H. and C.E., who had moved out of state, immediately arranged to return to Ohio. On November 12, 2018, C.E., K.H., and T.T. went to the Broadview Heights police station to report the rapes.

{¶ 3} On March 4, 2019, Marshall was indicted as follows: Count 1, rape (fellatio) by force of a victim under the age of ten; Count 2, kidnapping of a victim under the age of eighteen with a sexual motivation; Count 3, endangering children, causing serious physical harm; Count 4, disseminating matter harmful to a juvenile where the victim was under thirteen years of age; Count 5, rape (fellatio) by force of a victim under the age of ten; Count 6, rape (anal penetration) by force of a victim under the age of ten; Count 7, endangering children, causing serious physical harm; Count 8, kidnapping of a victim under the age of eighteen with a sexual motivation; Count 9, disseminating matter harmful to a juvenile where the victim was under 13 years of age; Count 10, endangering children.

{¶ 4} The parties filed several pretrial motions. Most relevant to this appeal, Marshall filed a motion to exclude any testimony regarding his past sexual behavior with T.T. Marshall argued that testimony from T.T. as to digital anal penetration

during intercourse and asking her to open her mouth wider during oral sex was not relevant or admissible. In his motion, Marshall argued that the evidence was inadmissible under the rape shield statute R.C. 2907.02(D) and that it was inadmissible under both Evid.R. 404(B) and R.C. 2945.59. In response, the state argued that the evidence was both admissible and relevant and that it would show Marshall's plan and modus operandi.

{¶ 5} The trial court heard testimony from T.T. prior to trial. After hearing her testimony, the trial court held in abeyance its ruling on Marshall's motion. The court found that the admissibility of T.T.'s testimony would depend on K.H.'s testimony.

{¶ 6} The trial began on February 12, 2020, and the testimony was as follows: Sometime in early 2009, K.H., C.E., and M.M., moved into Marshall's home in Broadview Heights. At that time, Marshall, T.T., and their daughter Al.M. lived in the home. At the time, C.E. had guardianship of M.M., her aunt, who had dementia. Moving in allowed C.E. to secure T.T.'s assistance in caring for M.M. The home had five bedrooms. K.H., C.E., and M.M. slept in a downstairs bedroom. Marshall and T.T. had the master bedroom on the second floor. Al.M.'s bedroom was next to the master. K.H. would share Al.M.'s room on occasion. Marshall's four other children, J.M., Am.M., I.M., and G.M. would periodically stay at the house. When all the kids were there, the boys would sleep in one room and the girls would sleep in another.

{¶ 7} K.H. thought of Marshall as an uncle and treated him as such. They had a good relationship. Marshall would always compare K.H. to T.T., telling her

that they looked a lot alike and that when K.H. grew up she was going to be prettier than T.T.

**The First Offense**

{¶ 8} K.H. testified that the first offense happened when C.E. and T.T. had gone shopping. Al.M. was watching TV on the first floor while K.H. was playing in Al.M.'s bedroom. Marshall was in the master bedroom, which also had a computer room. K.H. testified that Marshall called her by name, and she went into the computer room. When K.H. entered, she saw Marshall seated with his pants open and his penis exposed. Marshall started moving his penis and said to K.H., "I know you see it." K.H. testified she was scared and thought she was in trouble. When she tried to leave, Marshall grabbed her by the arm and wouldn't let her go. At that point, they heard the garage door open. Marshall let her go and K.H. ran out of the room.

{¶ 9} T.T. testified that Marshall told her about the incident; however, according to T.T., Marshall told her that K.H. inadvertently saw his penis when he was in the computer room. He alleged that he was wearing loose pants and his penis was exposed. Marshall told T.T. that he had an "uncle-niece" conversation with K.H. about how that was inappropriate. T.T. told C.E. about the incident. C.E. was upset when she heard, then talked to K.H. about it. Based on the information C.E. received at the time, she did not feel it was necessary to leave the home or take any further action.

**The Second Offense**

{¶ 10} K.H. testified that the second offense happened a couple of months after the first incident. K.H. was unsure exactly when this happened but was sure that T.T. was no longer living in the home at that time.

{¶ 11} During the second incident, K.H. testified that she woke up and her mother and great aunt were still sleeping. K.H. went upstairs to the master bedroom and started playing cards with Marshall. At some point, Marshall began to pick K.H. up and throw her on the bed. At one point, he picked her up and digitally penetrated her anus through her underwear before tossing her on the bed. Marshall asked her if it hurt and K.H. nodded yes. Marshall then grabbed a DVD that had a picture of a naked man and woman on it. The woman's legs were spread open, and the man was lying between them. K.H. testified that Marshall asked K.H. if she wanted that picture to be the two of them. K.H. didn't know what to say, so she nodded yes. After that, they kept playing cards until C.E. called up for K.H. and asked what she was doing. K.H. told C.E., "nothing, playing cards," then went back downstairs. K.H. did not tell C.E. what happened at that time because she was scared.

{¶ 12} On cross-examination, the defense questioned K.H. about a videotaped interview she gave to the police. K.H. testified that she did not recall some parts of her interview. On her second day of testifying, K.H. remembered that there were two incidents of oral sex, not one as she had previously testified. K.H. was not able to remember the details of the first incident of oral sex, only that it

either happened during the second incident or sometime between the second and third incident.

{¶ 13} The trial court then permitted the defense to show K.H. her videotaped statement to refresh her recollection. After viewing the video, K.H. recalled telling two of Marshall's children, Am.M. and J.M., about performing oral sex on Marshall. Additionally, she remembered that Am.M. and J.M. advised her to bite Marshall if he tried to make her do it again.

**The Third Offense**

{¶ 14} The third offense happened sometime after K.H., C.E. and M.M. moved out of the Broadview Heights home. K.H. was visiting the home to play with Marshall's children. All the kids were in the master bedroom with Marshall. Marshall would take turns throwing the kids on the bed. Marshall then told all the kids except K.H. to leave the room. J.M. hesitated, but, per K.H., Marshall yelled at him and J.M. left.

{¶ 15} Marshall then locked the door and got under the covers. He then pulled his pants down and made K.H. put her head under the covers. Marshall then told her to "open" and made her perform fellatio on him. He then proceeded to put his hand on K.H.'s head and move it up and down. K.H. bit him. Marshall asked her if she was okay and K.H. told him no. He then asked K.H. if she wanted to continue and K.H. told him no. K.H. then unlocked the door and ran downstairs.

{¶ 16} After viewing her videotaped statement, K.H. further recalled that before the third offense, she was sleeping in a bed with Marshall's two oldest

daughters, Am.M. and I.M. Marshall came into the room and got into bed with them, spooning K.H. When they all woke up, they went into the master bedroom and Marshall began throwing them on the bed. Then Marshall kicked the other children out of the room and made K.H. stay. K.H. testified that the remainder of the third offense incident occurred as she had testified earlier.

**T.T.'s Testimony**

{¶ 17} After K.H.'s testimony, the trial court decided to allow T.T.'s testimony about Marshall's habits with limits. The trial court permitted her to testify that Marshall repeatedly compared K.H. to T.T. and suggested that K.H. would grow to be more beautiful than T.T. The trial court also allowed T.T. to testify about Marshall's preference for digital anal penetration. The court found there was insufficient basis to allow T.T. to testify about Marshall telling her to open her mouth wider during oral sex.

{¶ 18} T.T. testified that she met Marshall around 2000 or 2001 when she was 18 or 19 years old. They were initially friends and then began seeing one another. T.T. became pregnant, around January of 2005. T.T. and Marshall moved in together within a year of Al.M.'s birth.

{¶ 19} T.T. testified that Marshall began comparing K.H.'s looks to hers when K.H. was five. Marshall would repeatedly say that K.H. and T.T. were "babes," and that K.H. would be prettier than T.T. when she grew up.

{¶ 20} T.T. testified that C.E. called her in November 2018 about K.H.'s allegations. When C.E. and K.H. returned to Ohio, T.T. went with them to the police

station. T.T. talked to Det. Ambrose separately. T.T. testified that she did not discuss K.H.'s allegations with either K.H. or C.E. T.T. first heard the nature of the allegations when she spoke to Det. Ambrose. When she learned that K.H. alleged that Marshall performed digital anal penetration, T.T. recalled that he did the same thing to her when they had sex.

{¶ 21} At trial, T.T. testified that when she and Marshall began having sex, he insisted on digital anal penetration. T.T. indicated she was uncomfortable with it at first and they talked about it. Marshall told T.T. that he did it because he felt it made his partner more aroused.

**Am.M.'s Testimony**

{¶ 22} Am.M., Marshall's oldest daughter, also testified. Am.M. testified that she became aware that K.H. had disclosed her allegations against Marshall to others in November of 2018 when she received a call from her stepmother, T.M. Am.M. spoke to Det. Ambrose on November 21, 2018. Also, Am.M. testified that in either 2008 or 2009, K.H. told her that Marshall and K.H. had touched each other's private parts and would watch videos. Am.M. believed that her other siblings, J.M., I.M., and G.M. were present during this conversation. Am.M. denied knowing about any oral sex and did not remember telling K.H. to bite Marshall's penis. Am.M. did remember Marshall commenting that K.H. looked like T.T.

{¶ 23} Am.M. specifically remembered one day sitting on the stairs at the Broadview Heights house, looking up, and seeing Marshall carry K.H. into his room and close the door. Am.M. testified that Marshall and K.H. were laughing and

joking. Am.M. remembered this incident because it was shortly after K.H. told her what had been happening with Marshall.

{¶ 24} Am.M. further disclosed that she did not want to be a witness and had not had contact with Marshall's side of the family since November 2018.

**Defense Case-in-Chief: T.M.'s testimony**

{¶ 25} T.M., Marshall's wife, testified on behalf of the defense. T.M. had known Marshall for 22 years and is the mother of two of his children, J.M. and I.M. T.M. testified that Marshall and T.T. were having problems in the beginning of 2009. She was aware of this because on two separate occasions Marshall stayed with her to avoid issues at home. T.M. testified that he moved in with her permanently about June 8, 2009, and they have been together since that date.

{¶ 26} T.M. testified that, except for a four-year period when Marshall was incarcerated in Texas, he has lived with her. T.M. did not believe anyone lived in the Broadview Heights house after June 8, 2009, because the house was foreclosed and was scheduled to be sold at sheriff's sale on June 29, 2009. However, she acknowledged on cross-examination that the house did not sell until a few years later. T.M. was unaware that C.E., K.H., and M.M. lived with Marshall in 2009. T.M. also was adamant that her children did not visit the Broadview Heights house after January 2009 and believed the same was true for Marshall's two other children, Am.M. and G.M.

**The Verdict**

{¶ 27} After the state's case-in-chief, the trial court dismissed one count of disseminating material harmful to a juvenile pursuant to Crim.R. 29. At the end of all the testimony, the remaining charges went to the jury.

{¶ 28} The jury found Marshall guilty on all of the remaining counts. Marshall presents the following assigned errors for our review.

**Assignment of Error No. 1**
The convictions of rape and kidnapping are against the manifest weight of the evidence.

**Assignment of Error No. 2**
The trial court erred in its admission of evidence which did not qualify under the exceptions for propensity evidence under Evid.R. 404(B).

**Assignment of Error No. 3**
The trial court plainly erred in allowing evidence under Evid.R. 404(B) but failing to provide the jury with a limiting instruction on the use of such evidence.

**Assignment of Error No. 4**
Defense Counsel provided ineffective assistance of counsel, in violation of the 6th Amendment of the United States Constitution, in failing to object to the trial court's failure to provide the jury with a limiting instruct [sic] on the use of 404(B) evidence.

**Weight of the Evidence**

{¶ 29} In his first assignment of error, Marshall argues that his convictions for rape and kidnapping were against the manifest weight of the evidence. Marshall argues that K.H.'s testimony lacked credibility, specifically pointing to her remembrance during trial of a second act of fellatio and her inability to pinpoint when certain events occurred. He argues that because of these inconsistencies his convictions were against the manifest weight of the evidence. Marshall further

argues that we should give less deference to the juries' findings of credibility. We disagree.

**Law and Analysis**

**{¶ 30}** When a defendant challenges his conviction based on the manifest weight of the evidence, he is challenging whether the prosecution met its burden of persuasion. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 32. We must determine "whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 29, citing *State v. Leonard,* 104 Ohio St.3d 54, 68, 2004-Ohio-6235, 818 N.E.2d 229. Therefore, when analyzing the manifest weight of the evidence, we must

> review the entire record, weigh the evidence, and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Jackson* at ¶ 32, citing *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus.

**{¶ 31}** To that end, we act as the "thirteenth juror" who has the discretionary power to grant a new trial. *State v. Taylor*, 8th Dist. Cuyahoga No. 108347, 2020-Ohio-3589, ¶ 38. The jury is in a unique position "to view the witnesses' demeanor, gestures, facial expressions, and voice inflections." *Id.* at ¶ 39. We reject Marshall's suggestion that we give less deference to the juries' determinations of credibility.

*State v. Hester*, 8th Dist. Cuyahoga No. 108207, 2019-Ohio-5341, ¶ 21. So "[a]lthough we have the discretionary power of a 'thirteenth juror' to grant a new trial, that power should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at ¶ 22.

{¶ 32} In the instant case, Marshall was convicted of three counts of rape under R.C. 2907.02(A)(1)(b), which required the state to prove he engaged in sexual conduct with K.H., who was not his spouse and was under the age of 13. The state also needed to show that he compelled K.H., who was under the age of ten, to submit by force or threat of force. In two of the counts, the "sexual conduct" was fellatio, in the third, it was anal penetration.

{¶ 33} Marshall was also convicted of two counts of kidnapping under R.C. 2905.01(A)(4), which required the state to prove that Marshall did, by force, threat, or deception, purposely remove K.H. from the place where she was found or restrain the liberty of K.H. for the purpose of engaging in sexual activity with K.H. against her will. The state was also required to prove that K.H. was under 18 at the time and that Marshall committed the offense with sexual motivation.

{¶ 34} It is axiomatic that, if believed, a victim's testimony is enough to prove rape. S*tate v. Wampler*, 6th Dist. Lucas No. L-15-1025, 2016-Ohio-4756, ¶ 58. The state need not present corroborating testimony or physical evidence "as a condition precedent to conviction." *Id.*, citing *State v. Reinhardt*, 10th Dist. Franklin No. 04AP-116, 2004-Ohio-6443, ¶ 29 and *State v. Birt*, 12th Dist. Butler No. 2012-02-031, 2013-Ohio-1379 ¶ 48.

**{¶ 35}** Here, K.H. testified to three incidents of rape. K.H. testified that Marshall had her perform oral sex on him two times. She also testified that Marshall digitally penetrated her anus.

**{¶ 36}** Furthermore, K.H. and T.T.'s testimony established that Marshall held the role of uncle towards K.H. The element of force may be shown where the "'youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.'" *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998), quoting *State v. Eskridge,* 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988).

**{¶ 37}** While corroboration was not necessary, other witnesses corroborated almost every aspect of K.H.'s testimony. K.H. testified that Marshall exposed himself to her. T.T. confirmed that Marshall told her that K.H. saw his exposed penis. C.E. confirmed that T.T. spoke to her about the incident and that she spoke to K.H. about it. Then, K.H. testified that she told Marshall's two oldest children about at least one instance of fellatio.

**{¶ 38}** Am.M., Marshall's daughter, confirmed that K.H. told her that Marshall and K.H. had touched each other's private parts. Am.M. further confirmed seeing her father carry K.H. into the master bedroom and close the door. Finally, K.H. testified to seeing a pornographic video cover, and Am.M. testified that K.H. told her that in addition to the touching, Marshall and K.H. watched videos.

{¶ 39} The state also presented the testimony of Kirsti Mouncey, chief program officer with the Rape Crisis Center. Mouncey utilized her knowledge of the behavior of child rape victims to help the jury understand how child rape victims process their assaults and how they remember them. Mouncey explained that child rape victims often try not to think too much about their sexual assaults in order to deal with it.

{¶ 40} Additionally, in some cases, Mouncey testified that child rape victims won't think about the details of the incident for years until something prompts them to disclose. Once that happens, Mouncey testified recalling the incidents can bring forth a lot of difficult emotions.

{¶ 41} Competent, credible evidence was presented to support the jury's findings of guilt.

{¶ 42} Marshall's first assignment of error is overruled.

### Other Acts Evidence

{¶ 43} In his second assignment of error, Marshall argues that the trial court erred in admitting the testimony of T.T. since that testimony did not fall into one of the exceptions under Evid.R. 404(B) or R.C. 2945.59. We agree that it was error for the evidence to be admitted but find that Marshall was not prejudiced by the admission.

**Standard of Review**

{¶ 44} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. "Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, [therefore] an appellate court should scrutinize the [trial court's] finding under a *de novo* standard" of review. *Id.*, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed.2019).

{¶ 45} "[T]he trial court is precluded by Evid.R. 404(B) from admitting improper character evidence, but it has discretion whether to allow other-acts evidence that is admissible for a permissible purpose." *Id.*, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. If the reviewing court finds that the evidence was admitted for a permissible purpose, this court "should not disturb [that decision] in the absence of an abuse of discretion that created material prejudice." *State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 66, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528 at ¶ 16. An abuse of discretion is more than an error of law or judgment. *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654, ¶ 13 (8th Dist.) "It implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *Id.*

## Law and Analysis

{¶ 46} In the instant case, the trial court permitted T.T. to testify as to specific instances of Marshall's sexual activity. Ordinarily, in a rape case, incidents of either the victim's or the defendant's past sexual activity would be inadmissible under the rape shield statute, R.C. 2907.02(D). *State v. Jeffries*, 160 Ohio St.3d 300, 2020-Ohio-1539, 156 N.E.3d 859, ¶ 14. However, there are exceptions. For a defendant the statute states:

> Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D).

{¶ 47} In the instant case, the origin of semen, pregnancy, or disease was not at issue. Further, the past sexual history of the defendant with the victim was not at issue. Therefore, the proposed evidence would only be admissible under R.C. 2945.49 and only if "its inflammatory or prejudicial nature does not outweigh its probative value." R.C. 2907.02(D).

{¶ 48} R.C. 2945.49 and Evid.R. 404(B) are in accord with one another although they do differ. R.C. 2945.49 states, in pertinent part:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act *is material*, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

(Emphasis added.) R.C. 2945.59.

{¶ 49} Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, "the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility." *State v. Valsadi*, 6th Dist. Wood No. WD-09-064, 2010-Ohio-5030, ¶ 47, citing *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), at paragraph one of the syllabus.

[I]n order for "other acts" evidence to be admissible, it must come within one of the theories of admissibility enumerated in Evid.R. 404(B) or R.C. 2945.59. In addition, proof of one of these purposes must go to an issue which is material in proving the defendant's guilt for the crime at issue. Further, the prior act must not be too remote and must be closely related in nature, time, and place to the offense charged. A prior act which is "* * * too distant in time or too removed in method or type has no permissible probative value."

*Valsadi* at ¶ 48.

{¶ 50} Here, Marshall argues that the evidence was not admissible under Evid.R. 404(B) or R.C. 2945.59.

{¶ 51} Evidence of an accused's other acts or crimes is admissible, but only if those acts "prove something other than the defendant's disposition to commit certain acts." *Hartman*, 161 Ohio St.3d 214 at ¶ 22. In other words, "while evidence

showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue." *Id.*

{¶ 52} In determining the admissibility of other acts evidence, we must determine whether the evidence is relevant. *Id.* at ¶ 24. The issue with other acts evidence, however, is that propensity evidence will almost always have some relevance. *Id.* at ¶ 25. Propensity evidence is excluded "not because it has no appreciable probative value but because it has too much." *Id.*, citing 1A Wigmore, *Evidence*, Section 58.2, at 1212 (Tillers Rev. 1983).

{¶ 53} Therefore, when it comes to other acts testimony, the question is not "whether the other-acts evidence is relevant to the ultimate determination of guilt. Rather, the court must evaluate whether the evidence is relevant *to the particular purpose* for which it is offered." (Emphasis sic.) *Id.* at ¶ 26 Further, "the nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is *actually in dispute between the parties*." (Emphasis added.) *Id.* at ¶ 27. Not only must the evidence go to a material issue, but there must be "a threshold showing that the act for which the evidence is offered actually occurred. * * * and that the defendant was the actor." *Id.* at ¶ 28.

{¶ 54} So, in summary, other acts evidence is inadmissible unless it is a) relevant to the nonpropensity purpose for which it is being introduced, b) admitted prove/supporting an issue that is actually in dispute in the case at hand, and c) there is evidence that i) the act occurred and ii) the defendant committed the act. Whether

the probative value of the other acts evidence outweighs the prejudicial effect of the evidence only becomes an issue if the evidence survives this initial threshold of admissibility.

{¶ 55} In the instant case, the state argued that T.T.'s testimony was relevant to show Marshall's modus operandi or plan.[1] They argued that T.T.'s testimony would demonstrate that Marshall essentially groomed T.T. and groomed K.H. in a similar manner. "'Modus operandi' literally means method of working." *Hartman* at ¶ 37. "A modus operandi provides a 'behavioral fingerprint' for the other acts, which can be compared to the behavioral fingerprint for the crime in question." *State v. Thompson*, 8th Dist. Cuyahoga No. 109110, 2020-Ohio-5257, ¶ 36. "It is evidence of signature, fingerprint-like characteristics unique enough 'to show that the crimes were committed by the same person.'" *Hartman* at ¶ 37, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019).

{¶ 56} In *Hartman,* for instance, Hartman was accused of raping an adult female acquaintance who was asleep in her hotel room when the assault happened. The state introduced the testimony of Hartman's stepdaughter whom he was alleged to have sexually assaulted while she was asleep in her bedroom. *Hartman* at ¶ 36. The state argued that they were not introducing the testimony to suggest that

---

[1] In their brief before this court, the state argues that the evidence was admissible to show absence of mistake or accident. However, the state did not argue this below, either in their motion or during the admissibility hearing. Further, Marshall never argued mistake or accident, he denied the allegations. As mistake or accident was not an issue in this case and was not raised, the state has waived that argument on appeal. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, ¶ 57.

Hartman was the kind of person who assaults sleeping females, but that the testimony proved that Hartman's modus operandi was to sexually assault females while they were asleep and that his modus operandi identified him as the perpetrator. *Id.*

{¶ 57} The Ohio Supreme Court disagreed. The court noted that "[t]here is nothing fingerprint-like about molesting a child in a bed during the night." *Id.* at ¶ 38. The court further found that there were no idiosyncratic features of the child molestation that were also present in the alleged rape. *Id.* Finally, the court noted that identity was not an issue in the case since the victim, E.W., knew who Hartman was before the assault. *Id.* at ¶ 39.

{¶ 58} In the instant case, the state's introduction of other acts to demonstrate modus operandi was a subterfuge in order to introduce otherwise prohibited behavioral evidence and must be rejected. T.T.'s testimony did not establish a behavior fingerprint linking K.H.'s assaults with T.T.'s interactions with Marshall. T.T. merely testified that Marshall digitally penetrated her anus during sex. There is nothing idiosyncratic about digital anal penetration during intercourse such that it can only be used to identify Marshall. Furthermore, as in *Hartman*, Marshall's identity was never in question. K.H. identified him as the perpetrator from the outset.

{¶ 59} The state's introduction of T.T.'s testimony served just one purpose, i.e., to establish that Marshall was the type of person who would digitally penetrate

a sexual partner's anus. Therefore, T.T.'s testimony was not admissible under Evid.R. 404(B) or R.C. 2945.59 in order to prove modus operandi.

{¶ 60} The state further argued that the evidence was admissible to show Marshall's plan. Evidence of a "plan" typically involves "other acts" that "are linked to the present crime because they are carried out in furtherance of the same overall plan." *Id.* at ¶ 40. Plan evidence typically contemplates a larger criminal scheme of which the alleged crime is just a portion. *Id.* T.T.'s testimony did not establish a larger criminal scheme culminating in the rape of K.H. Testimony about Marshall's consensual sexual relationship with an adult partner had no link whatsoever to his alleged behavior with K.H. nor did it constitute a crime or portion of the crime. Therefore, T.T.'s testimony was not admissible under Evid.R. 404(B) or R.C. 2945.59 in order to prove plan.

{¶ 61} The state's failure to establish T.T.'s testimony as either a modus operandi or a plan renders the evidence inadmissible. Furthermore, the state must show that modus operandi or plan were material issues of the case against Marshall. This was a single-victim case in which all the testimony was about Marshall's actions with K.H. This was not a case where the victim could not identify her perpetrator and testimony was necessary to establish the identity of the person who attacked her. Further, there was no evidence presented at trial to establish an overarching criminal plan that culminated in K.H.'s sexual assault. Consequently, the state failed to demonstrate that the modus operandi or plan was material.

**{¶ 62}** Consequently, the trial court erred in admitting T.T.'s testimony as a matter of law.

**{¶ 63}** This does not end our analysis, however. When other acts evidence is erroneously admitted, reversal of the conviction and a new trial is only warranted if it can be shown that: 1) Marshall was prejudiced by the admission of the improper evidence, and 2) that the error was not harmless beyond a reasonable doubt. *State v. Miller*, 8th Dist. Cuyahoga No. 101225, 2015-Ohio-519, ¶ 33.

**{¶ 64}** "[A] judgment of conviction should not be reversed because of 'the admission * * * of any evidence offered against * * * the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.'" *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27, citing *State v. Crawford*, 32 Ohio St.2d 254, 255, 291 N.E.2d 450 (1972), quoting R.C. 2945.83(C). "In making these determinations, an appellate court 'must excise the improper evidence from the record and then look to the remaining evidence' for either overwhelming evidence of guilt or some other indicia that the error did not contribute to the accused's conviction." *State v. Lavette*, 8th Dist. Cuyahoga No. 106169, 2019-Ohio-145, ¶ 47, citing *Morris*, 141 Ohio St.3d 399 at ¶ 29.

**{¶ 65}** In the instant case, we find that, after removal of the offending testimony, there was overwhelming evidence of Marshall's guilt. As noted previously, K.H.'s testimony established what occurred and that along with the testimony of other witnesses established overwhelming evidence of guilt.

{¶ 66} Although the trial court erred in admitting T.T.'s evidence, we find that there was overwhelming evidence of Marshall's guilt and therefore, the admission of T.T.'s testimony was harmless error. Marshall's second assignment of error is overruled.

## Jury Instructions

{¶ 67} In his third assignment of error, Marshall argues that the trial court erred in failing to give a limiting instruction for the use of Evid.R. 404(B) evidence. We disagree.

## Standard of Review

{¶ 68} "The giving of jury instructions is typically within the sound discretion of the trial court, and we review it for an abuse of discretion." *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, ¶ 29. "An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable." *Cleveland v. Cornely*, 8th Dist. Cuyahoga No. 109556, 2021-Ohio-689, ¶ 17, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

## Law and Analysis

{¶ 69} In the instant case, Marshall did not object to the jury instructions. A party waives on appeal any issue regarding jury instructions if they fail to object before the instructions are given to the jury. Crim.R. 30(A). As Marshall failed to object to the proposed jury instructions, he has waived all but plain error.

{¶ 70} "Where the defense fails to request a limiting instruction on other acts evidence, the trial court's failure to give such an instruction is not plain error where

nothing suggests the jury used other acts evidence to convict the defendant because he was a bad person." *State v. Jeffries*, 8th Dist. Cuyahoga No. 105379, 2018-Ohio-162 at ¶ 30.

**{¶ 71}** As we have already found that there was overwhelming evidence of guilt, and that Marshall was not prejudiced by the introduction of T.T.'s testimony, we find that the failure to give jury instructions does not rise to the level of plain error.

**{¶ 72}** Therefore, Marshall's third assignment of error is overruled.

## Ineffective Assistance of Counsel

**{¶ 73}** In his fourth assignment of error, Marshall argued that he received ineffective assistance of counsel when his counsel failed to request a limiting instruction after the introduction of other acts evidence. We disagree.

## Law and Analysis

**{¶ 74}** To establish ineffective assistance of counsel, a defendant must show that their counsel's performance fell below an objective standard of reasonableness and that they were prejudiced by that deficient performance, such that but for their counsel's deficient performance, the outcome of the trial would have been different. *State v. Barnes*, 8th Dist. Cuyahoga No. 92512, 2010-Ohio-1659, ¶ 67, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶ 75}** In conjunction with the idea that a trial court is not required to sua sponte give a limiting instruction when other acts evidence is admitted, a lawyer is

not required to request a limiting instruction. "Depending on the nature of the other-acts evidence and the context in which it is used, defense counsel may as a matter of strategy wish to avoid highlighting the evidence for the jury." *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 67, citing *State v. Schaim*, 65 Ohio St.3d 51, 61, 600 N.E.2d 661 (1992), fn. 9.

{¶ 76} Marshall argues that his trial counsel forgot to request the limiting instruction. He further argues that this was not a strategic decision because there was no benefit to Marshall in allowing the jury to consider T.T.'s testimony as probative of guilt. We disagree.

{¶ 77} In order to find ineffective assistance of counsel, we must find that Marshall's lawyer's conduct fell below an objective standard of reasonableness. *Barnes* at ¶ 67. A counsel is presumed competent, and a defendant must overcome the presumption that his counsel's decisions were not the product of sound trial strategy. *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 21, citing *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 36-37. We are unable to find that counsel's assistance fell below an objective standard of reasonableness.

{¶ 78} Contrary to Marshall's argument, Marshall's counsel was far from forgetful in this case. His counsel filed multiple motions to exclude and limit testimony, including but not limited to, a motion to exclude testimony from the rape crisis center, a motion to exclude other acts evidence of an arrest in 2009 that did not lead to a conviction, and a motion to limit the testimony of Det. Ambrose.

Counsel displayed a thorough grasp of the possible evidentiary pitfalls in this case and sought to limit or minimize the effects of that evidence as much as possible.

{¶ 79} Even if Marshall's counsel were ineffective for failing to request a limiting instruction, we cannot say that counsel's failure rose to the level of prejudice to Marshall. In order to show prejudice, Marshall must show that it is reasonably probable that except for the errors of his counsel, the outcome of the proceedings would have been different. *State v. Garvin*, 197 Ohio App.3d 453, 2011-Ohio-6617, 967 N.E.2d 1277, ¶ 57 (4th Dist.). As we have noted, there was overwhelming evidence of Marshall's guilt, and the nature of the admitted evidence was not so egregious that it required a new trial. Therefore, the error did not so prejudice Marshall that it affected the outcome.

{¶ 80} We, therefore, find that Marshall's counsel was not ineffective for failing to request a limiting instruction for the other acts evidence.

{¶ 81} Marshall's fourth assignment of error is overruled.

{¶ 82} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR