LARRY A. JONES, SR., J.:
{¶ 1} Defendant-appellant Ky'Tric Shropshire ("Shropshire"), along with codefendants Jamall Lewis ("Lewis") and Ramel Lee ("Lee"), was charged in January 2016 with several counts and specifications relating to the April 2013 death of Regina Neal ("Neal") and shooting of Charles Elder ("Elder").
{¶ 2} With the exception of the gang specifications and a charge of having weapons while under disability, Shropshire's case proceeded to a joint jury trial with Lewis's case.[1] The jury found Shropshire guilty of aggravated murder, murder, attempted murder, and felonious assault, along with the relevant accompanying specifications; he was acquitted of one charge-discharge of a firearm on or near prohibited premises. The trial court found him guilty of the gang specifications and having weapons while under disability. The court sentenced Shropshire to life imprisonment with the possibility of parole after 25 years. The following facts were elicited at trial.
Facts
{¶ 3} The shooting and death that occurred in this case were the result of gang violence. The rival gangs at issue were the ATM Jack Boys and the J-Park gang. Elder, one of the victims, testified that a number of his friends are members of the ATM Jack Boys; he denied that he himself was involved in any gang.
{¶ 4} On the evening in question, Elder and the other victim, Neal, who was Elder's close friend, went for a walk; they were in an area considered to be ATM Jack Boys territory. Elder testified that both he and Neal were unarmed. As the two walked, Elder felt an impact that caused him to fall over, and then he heard a succession of rapid-fire shots. He had been shot in his calf.
{¶ 5} When the shooting stopped, Elder looked back and saw a male figure wearing a red hooded sweatshirt, with the hood drawn tight around his face so that only his nose and mouth were visible; he admitted that it was "kind of dark."
*983 {¶ 6} Elder began crawling toward Neal's house, screaming for help. Two of his friends from the ATM Jack Boys, "Diaz" and Jermaine Cottrell, a.k.a. "Mane," came to his aid. Elder then saw the man with the red hooded sweatshirt drive by in a small white car. His friends called 911, and he was transported by ambulance to the hospital. Because of the gunshot injury, Elder was unable to walk for six months and has sustained permanent nerve damage in his leg.
{¶ 7} Elder described his assailant to the police as short and stocky, with a "big nose and big lips." He did not immediately provide the police with a suspect name, but when he did, he told them that he "felt like [he] did recognize" his shooter, and believed it may have been Jamall Lewis, Shropshire's codefendant. Lewis was a known member of the J-Park gang and had had a recent altercation with Elder's brother.
{¶ 8} Approximately one month after the shooting, Elder applied for victim's compensation from the state. He indicated to the employee assisting him that he was not able to positively identify his assailant. The employee insisted that he put down a name on the form, so he listed Lewis. Prior to trial, Elder identified Lewis from a photo array; he identified him again at trial.
{¶ 9} As part of its investigation into the case, the Cleveland police learned the name of the owner of the white vehicle that Elder saw immediately after the shooting, but excluded the owner from involvement in the shooting. Also during their investigation, the police recovered 16 fired bullet shell casings from the area of the shooting, including shells from .40 caliber, .45 caliber, and 9mm weapons. They linked the .40 shell casings to a Taurus pistol that was seized during an arrest in Bedford Heights. The caliber of the pellet recovered from Neal's body could not be determined, however.
{¶ 10} The case went "cold," until March 2015, when a juvenile, S.L., who was under detention, came forward to cooperate with law enforcement officials.[2] The police interviewed S.L. twice before taking a proffer statement from him on March 6, 2015. The police did not know that he was going to give information about the shooting in this case, and S.L. voluntarily brought it up. The state had not made S.L. any plea offer prior to his proffer. S.L. testified at trial, the substance of which was the same as his proffer, and was as follows.
{¶ 11} S.L. was a member of the J-Park gang. Earlier in the day of the shooting, while out walking, he had been the target of a drive-by shooting by whom he believed to be ATM Jack Boys gang member "Mane." So he met with other J-Park gang members Lewis, Shropshire, and Lee at Shropshire's house to plan revenge, which meant either fighting or shooting those they believed were responsible. They borrowed a silver SUV belonging to one of Shropshire's friends and headed to ATM Jack Boys territory; Lee was the driver. Lewis had a .40 caliber weapon and Shropshire had a .45 caliber weapon; S.L. and Lee were not armed. S.L. stated that Lee was wearing a red hooded sweatshirt, Lewis was wearing a gray hooded sweatshirt, and Shropshire was wearing a blue jacket.
{¶ 12} When the group arrived in ATM Jack Boys territory, they circled the area, looking for ATM Jack Boys gang members. They saw a small group of people standing outside and drove to and parked on the next street over so they could plan *984 what they were going to do. They decided that Shropshire and Lewis would go to the small group they had just seen and do the shooting, and S.L. and Lee would remain in the car. Shropshire and Lewis then left the vehicle with their weapons; Shropshire had a .45 caliber weapon, and Lewis had a .40 caliber weapon.
{¶ 13} S.L. testified that moments after Shropshire and Lewis left the vehicle, he heard a succession of gunfire, approximating 20 shots in all, and then Shropshire and Lewis reappeared at the vehicle, with their weapons in hand. They quickly got inside the vehicle, and Lee sped away. He drove the group to Shropshire's house, where everyone quickly dispersed and went their separate ways. According to S.L., they did not talk about what had happened. S.L. testified that he learned a few days later through social media that Neal and Elder had been shot. He claimed that he did not know either one of them. S.L. further testified that Shropshire and Lewis got rid of the weapons, and that he (S.L.) later obtained the .45 firearm, which was "going around the neighborhood."
{¶ 14} As mentioned, at the time S.L. made his proffer, he was facing a mandatory bindover to adult court for an aggravated robbery charge with firearm and gang activity specifications. After his proffer, however, he entered into a plea agreement with the state and his case was not bound over to adult court. As part of the plea, he was placed at a boarding school for ten months. At the time of trial, he was still under probation and his testimony was part of his plea agreement.
{¶ 15} Colin Ginley ("Detective Ginley"), a detective with the Cleveland Police Department's Gang Impact Unit also testified at trial. Detective Ginley was the law enforcement official who interviewed S.L. twice before his proffer, and then took the proffer. The detective testified that the police do not make any guarantees to informants who come forth with information about a crime. Rather, they relay the information to the investigating detectives so that they can try to corroborate the information. If law enforcement is able to corroborate the information given by the informant, the state will consider that help when prosecuting the informant, and the information the informant provided cannot be used against him or her.
{¶ 16} Detective Ginley also testified as to the substance of S.L.'s proffer, including describing the earlier shooting and the planned revenge shooting in this case. He testified that police reports confirmed that there had been a shooting in the area around the time S.L. said. He further testified that S.L. told him that Shropshire and Lewis killed Regina Neal.
{¶ 17} At the conclusion of the state's case, Shropshire made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. As mentioned, the jury acquitted him of the discharge of firearm on or near prohibited premises charge, but convicted him on the remaining charges and specifications; the court also convicted him on the specifications tried to it, as well as the having weapons while under disability charge. The trial court sentenced him to life imprisonment, with parole eligibility after 25 years.
Assignments of Error
I. Rule 802, Ohio Rules of Evidence, augmented by the right of confrontation, was violated when the jury was allowed to consider as substantive proof certain hearsay evidence that was not admissible as proof of the matter asserted. With this being so, the court erred when it allowed the jury to consider this indisputable hearsay as substantive proof of guilt.
II. The court committed egregiously prejudicial error when it allowed the state's "gang expert" to give overview *985 testimony (descriptive of his investigation), which included asserted proof of the defendant's alleged involvement in "gang activity," where most of his testimony was not based on personal knowledge.
III. The court erred and the appellant's right of confrontation was violated, in the wake of the court's admission of considerable hearsay testimony provided by the witness, Det. Ginley.
IV. Counsel for the state was guilty of misconduct, and the accused was denied a fair trial, when despite the fact that the defense's objections were overruled, he asked a detective, who testified as an expert, certain questions that over-stepped the bounds of propriety and fairness, and as such deprived the accused of a fair trial.
V. A prosecutor is guilty of misconduct when, in the wake of allowing himself to become an unsworn witness, he expressly conveys to the jury his own personal opinion, and openly endorses the opinions of two (2) of the officers who investigated the case, that the accused was guilty as charged.
VI. Given the content of a written statement made by an admitted homicide accomplice, indeed after he was taken into custody (for a different offense), and which was given after a motive to falsify arose, it is not admissible as substantive proof to rehabilitate the witness' credibility under the recent fabrication exception to the hearsay rule, it follows the admission of such proof in this case was indefensible.
VII. Given the fact that the various accusatorial statements directed at the accused, made by a witness, who admitted to being an accomplice in the homicide case then being tried, which statements were originally made after a motive to testify falsely arose, such statements were not admissible under the recent fabrication exception. So postured, the admission of such proof deprived the appellant of a fair trial.
Law and Analysis
{¶ 18} In the first, sixth, and seventh assignments of error, Shropshire challenges the admission of S.L.'s statements, both as written and testified to by Detective Ginley, as impermissible hearsay. The assignments will be considered together.
{¶ 19} We start by recognizing the well-established principle that the admission or exclusion of relevant evidence is a matter left to the sound discretion of the trial court. State v. Sage , 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. Id.
{¶ 20} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. Evid.R. 802, 803, 804 ; State v. Steffen , 31 Ohio St.3d 111, 509 N.E.2d 383 (1987). Statements constitute hearsay only if they were offered to prove the truth of the matters asserted in those statements. If those statements were offered for some other purpose, they are not inadmissible hearsay. State v. Davis , 62 Ohio St.3d 326, 344, 581 N.E.2d 1362 (1991).
{¶ 21} Evid.R. 801(D)(1) deals with prior statements of a witness. The rule provides in pertinent part as follows:
(D) Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing *986 and is subject to cross-examination concerning the statement, and the statement is * * *
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]
Evid.R. 801(D)(1)(b).
{¶ 22} The Staff Notes accompanying the Rule state the following:
There are three types of statements by a witness which may qualify as non-hearsay under this subdivision and may be admissible as non-hearsay to prove the matters asserted in such prior statements. The rule does not limit the use of such statements for either impeachment or rehabilitative purposes. The statements may be used as substantive evidence of the matters asserted. The three categories are (a) prior inconsistent statements of a witness if made under oath subject to cross-examination, (b) prior consistent statements offered to rebut charges of recent fabrication or improper motive, and (c) prior identification by a witness.
{¶ 23} Thus, a prior out-of-court statement by the same witness will not be considered hearsay if the "declarant testifies at trial or hearing and is subject to cross-examination concerning the statement," and the statement is "consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." Evid.R. 801(D)(1) ; State v. Pritchard , 8th Dist. Cuyahoga No. 78497, 2001 WL 898427, *3 (Aug. 2, 2001).
{¶ 24} The Ohio Supreme Court addressed this issue in State v. Lang , 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596. In Lang , the codefendant entered into a plea agreement under which he pled to lesser charges in exchange for truthful testimony against Lang. In its opening statement, the defense contended that the state would present statements of a person "with an interest in the case," and implied that the codefendant "had a motive to lie because of the favorable terms of his pretrial agreement." Id. at ¶ 108-109. The court held that the defense's contentions constituted "an allegation of recent fabrication that allowed the state to introduce the codefendant's prior consistent statements to rehabilitate his testimony." Id. at ¶ 110. The court further reasoned that admission of the codefendant's prior statements was proper because the statements were made prior to him entering into a plea agreement. Id. at ¶ 111.
{¶ 25} Here, the defense's attack on the credibility of the state's witnesses started in opening statements with suggestions to the jury to consider what S.L.'s motivations were for his proffer, and that his plea deal was "one of the sweetest deals that ever happened." The defense also referenced the many times S.L. had testified throughout various stages in the case and the differences in his testimony vis-a-vis his proffer. Moreover, the record demonstrates that when S.L. provided information about this case to the police he had not yet entered into a plea agreement with the state; it was made, therefore, before any offer of leniency.
{¶ 26} In regard to Detective Ginley's testimony, he was merely testifying as to what S.L. told him; his testimony was therefore cumulative to S.L.'s testimony. We are not persuaded by Shropshire's contention that having the detective testify to S.L.'s statements unfairly made them seem more credible. When a hearsay declarant is examined at trial "on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless."
*987 State v. Tucker , 8th Dist. Cuyahoga No. 83419, 2004-Ohio-5380, 2004 WL 2251800, ¶ 78, citing State v. Tomlinson , 33 Ohio App.3d 278, 281, 515 N.E.2d 963 (12th Dist.1986).
{¶ 27} Under this context, the trial court properly allowed the state to use S.L.'s prior consistent statements to oppose the attacks on his credibility. The first, sixth and seventh assignments of error are therefore overruled.
{¶ 28} In his second assignment of error, Shropshire contends that the trial court erred by allowing Detective Ginley's "overview testimony," which included testimony of Shropshire's "gang activity," but was not based on the detective's personal knowledge.
{¶ 29} Prior to the detective's testimony, the court entertained the defense's objection to it. Specifically, at that point in the trial, S.L. had already testified and established the existence of the J-Park gang. The defense's objection, therefore, was that having Detective Ginley testify about any gang activity would be cumulative and overly prejudicial to the defense.
{¶ 30} The trial court found that Detective Ginley was qualified as a gang expert and, as such, could testify in general as to what he knew about the J-Park and ATM Jack Boys gangs, such as their territory, symbols, and clothing the members wore, but he would not be allowed to testify that, based on his expertise, he believed Shropshire or Lewis to be affiliated with any particular gang. But if the detective knew their gang affiliation from his conversations with them, he could testify to that.
{¶ 31} The only citation to the record that Shropshire relies on in support of his assigned error occurred when the trial court said the following: "I don't see * * * how a detective can get up and, based on [the information] he gathered [during his investigation], vouch for the theory that [Shropshire and the codefendants] were in the car." According to Shropshire, "it happened the detective was allowed to do just that." Shropshire's assertion that the trial court's statement was attributable to Detective Ginley's testimony about gangs is not correct, however.
{¶ 32} The court's statement was not made relative to Detective Ginley. Rather, the following context surrounds the court's statement. The state mentioned that there had been insinuation in the case that codefendant Lee and S.L. had been the shooters and the state wanted to let the jury know that S.L. testified against Lee at Lee's trial, and his testimony corroborated his proffer.
{¶ 33} Thus, the state wanted to ask one of the investigating detectives, Detective Tim Entenok ("Detective Entenok"), if he had discovered any evidence to support S.L. as being the shooter. The state was concerned that Shropshire and Lewis could argue as their defense that the shooters could have been S.L. and Lee and the state would not be able to rebut that.
{¶ 34} The trial court ruled that it would not allow that, for the reasons quoted above; namely, that all Detective Entenok had done was "collect information," the state's direct testimony on who the shooters were came from S.L., and it was the province of the jury to believe or discredit his testimony. The statement cited by Shropshire does not, therefore, stand for the proposition that he suggests it does. Further, Detective Entenok's testimony stayed within the bounds set by the trial court. Moreover, as set forth below, Detective Ginley's gang testimony was proper.
{¶ 35} A police officer may be qualified as an expert on gangs if the officer has gained knowledge and experience about gangs through investigating gang activities and if his or her testimony shows that he or she possesses specialized knowledge about gang symbols, cultures, and traditions, beyond that of the trier of fact.
*988 State v. Jones , 10th Dist. Franklin No. 99AP-704, 2000 WL 756843, *6 (June 13, 2000).
{¶ 36} Detective Ginley testified that he joined the Cleveland Police Department's Gang Impact Unit in June 2013, and began investigating both of the rival gangs at issue in this case. The fact that he was not in the gang unit at the time of the shooting was inconsequential. At the time of his testimony, he had had enough expertise with gangs to testify about them.
{¶ 37} In light of the above, the second assignment of error is without merit and overruled.
{¶ 38} For his third assigned error, Shropshire contends that his right to confrontation was violated by Detective Ginley's testimony. The testimony Shropshire challenges is, again, the detective's testimony as to what S.L. told him. For the reasons that follow, we find that the testimony was permissible.
{¶ 39} The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has held that admission of out-of-court statements violates a defendant's right to confrontation when they are "testimonial and the defendant has had no opportunity to cross-examine the declarant." Crawford v. Washington , 541 U.S. 36, 52-53, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
{¶ 40} Although the Supreme Court did not define "testimonial" in Crawford , it did state that testimonial statements included those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52, 124 S.Ct. 1354 ; see also State v. Arnold , 126 Ohio St.3d 290, 294, 933 N.E.2d 775 (2010).
{¶ 41} Notwithstanding the above, even where an out-of-court statement is found to be testimonial, the Confrontation Clause is not violated so long as the "declarant testifies at trial." State v. Keenan , 81 Ohio St.3d 133, 142, 689 N.E.2d 929 (1998), citing California v. Green , 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In Keenan , for example, the Ohio Supreme Court found that a detective's testimony about a witness's out-of-court statements made to him did not violate the Confrontation Clause because the witness testified at trial and was subject to cross-examination. Id. at 142, 689 N.E.2d 929.
{¶ 42} Here, although S.L.'s statements were probably testimonial in nature, he testified at trial and was subject to vigorous cross-examination about the exact nature of the statements contained in his proffer. On this record, therefore, Shropshire's right to confront S.L. was not violated. The third assignment of error is therefore overruled.
{¶ 43} For his fourth and fifth assignments of error, Shropshire contends that the assistant prosecuting attorney engaged in misconduct by asking questions that "over-stepped the bounds of propriety and fairness," and by expressing his own personal opinion and endorsing the views of the investigating police officers in closing statements. For the reasons that follow, we find no merit to the claims.
{¶ 44} Prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial due to the prosecutor's prejudicial remarks. State v. Maurer , 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). A reviewing court "will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments."
*989 State v. Smith , 12th Dist. Butler No. CA2007-05-133, 2008-Ohio-2499, 2008 WL 2168427, ¶ 9.
{¶ 45} Further, in regard to closing remarks, the prosecution is entitled to a degree of latitude. State v. Smith , 14 Ohio St.3d 13, 13-14, 470 N.E.2d 883 (1984). Prosecutorial misconduct will only be found where the prosecution's remarks made during closing argument were improper and those remarks prejudicially affected the substantial rights of the defendant. State v. Elmore , 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 62. Statements that may "inflame the passions and prejudice of the jury" are deemed improper because they wrongly "invite the jury to judge the case upon standards or grounds other than" those upon which it is obligated to decide the case, namely, the law and the evidence. State v. Cunningham , 178 Ohio App.3d 558, 2008-Ohio-5164, 899 N.E.2d 171, ¶ 27 (2d Dist.), citing State v. Draughn , 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992). However, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Hill , 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).
{¶ 46} Shropshire first contends that the state's questioning of Detective Ginley on S.L.'s proffer amounted to prosecutorial misconduct. As already discussed, however, the trial court sanctioned the questioning, deeming the testimony admissible as nonhearsay under the prior consistent statement exclusion. There was no misconduct on the part of the state in this regard.
{¶ 47} Likewise, Shropshire's second allegation of prosecutorial misconduct-improper commentary during closing arguments-is without merit. We initially note that the defense did not object to the alleged improper commentary. Failure to object waives all but plain error. State v. Davis , 62 Ohio St.3d 326, 337, 581 N.E.2d 1362 (1991). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.
{¶ 48} The specific alleged improper comment was the assistant prosecuting attorney stating during closing argument that Detectives Ginley and Entenok found S.L. to be credible. The state, however, is "permitted to fairly comment on the credibility of witnesses based on the witnesses' testimony at trial." State v. Price , 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979).
{¶ 49} Upon review, the assistant prosecuting attorney's comments did not allude to any matters that were unsupported by evidence or testimony presented at trial. The inferences the prosecutor made were reasonably based on the evidence. Shropshire received a fair trial-nothing in the closing argument rises to the level of plain error. There was enough evidence presented for the jury to have found him guilty beyond a reasonable doubt.
{¶ 50} In light of the above, the fourth and fifth assignments of error are overruled.
{¶ 51} Judgment affirmed.
PATRICIA ANN BLACKMON, P.J., and ANITA LASTER MAYS, J., CONCUR

Lee's case and charges from another case were tried to the court. As relevant to the charges relating to this case, the trial court found him guilty of murder, attempted murder, felonious assault, and discharging a firearm near prohibited premises. His convictions were affirmed on appeal. State v. Lee , 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, 2017 WL 1407331.
Lewis was convicted of aggravated murder, murder, felonious assault, attempted murder, with firearm, repeat violent offender, and gang specifications, and having a weapon while under disability. His convictions were also affirmed on appeal. State v. Lewis , 2017-Ohio-7480, 96 N.E.3d 1203.

S.L. was facing a mandatory bindover to adult court for aggravated robbery with firearm and gang activity specifications.