[Cite as *State v. Marshall*, 2022-Ohio-2666.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                    :

                            No. 109633

    v.                                                :

JUANITO MARSHALL,                          :

    Defendant-Appellant.                  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** August 1, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-635603
Application for Reopening
Motion No. 553340

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney and Sarah E. Hutnik, Assistant Cuyahoga County Prosecuting Attorney, *for appellee.*

Kenneth D. Myers, *for appellant.*

EMANUELLA D. GROVES, J.:

**{¶ 1}** Applicant, Juanito Marshall, seeks to reopen his appeal, *State v. Marshall*, 8th Dist. Cuyahoga No. 109633, 2021-Ohio-4434. He claims appellate

counsel was ineffective for failing to argue the following proposed assignments of error:

### Proposed Assignment of Error No. 1

Appellant was denied effective assistance of counsel when trial counsel failed to object, failed to seek a limiting instruction and failed to move for a mistrial when a witness revealed that defendant had been incarcerated.

### Proposed Assignment of Error No. 2

The trial court erred by permitting a social worker who had already been excluded as an expert witness to testify as a fact witness about the reasons a rape victim may delay reporting the incident and trial counsel was deficient in failing to ask for a limiting instruction.

### Proposed Assignment of Error No. 3

The trial court erred by allowing inadmissible evidence.

### Proposed Assignment of Error No. 4

Appellant was denied effective assistance of counsel when trial counsel failed to object to the prosecutor making improper statements in closing arguments and failed to move for a mistrial or a new trial due to prosecutorial misconduct.

{¶ 2} After a thorough review of the arguments raised in the application, brief in opposition, reply, and the record, we deny the application for reopening.

### Factual and Procedural History

{¶ 3} On March 4, 2019, Marshall was indicted and charged with three counts of rape of a victim under the age of ten, two counts of kidnapping, three counts of endangering children, and two counts of disseminating matter harmful to a juvenile. These charges stemmed from the sexual abuse of K.H. when she was

seven years old, which K.H. did not report until she was 16. A jury trial was conducted that resulted in findings of guilt on all the charges except a single count of disseminating material harmful to a juvenile, which was dismissed by the court. Marshall received a sentence of life in prison with parole eligibility after 25 years.

{¶ 4} Marshall appealed to this court assigning four errors for review:

## Assignment of Error No. 1

The convictions of rape and kidnapping are against the manifest weight of the evidence.

## Assignment of Error No. 2

The trial court erred in its admission of evidence which did not qualify under the exceptions for propensity evidence under Evid.R. 404(B).

## Assignment of Error No. 3

The trial court plainly erred in allowing evidence under Evid.R. 404(B) but failing to provide the jury with a limiting instruction on the use of such evidence.

## Assignment of Error No. 4

Defense Counsel provided ineffective assistance of counsel, in violation of the 6th Amendment of the United States Constitution, in failing to object to the trial court's failure to provide the jury with a limiting instruct [sic] on the use of 404(B) evidence.

{¶ 5} In our opinion issued December 16, 2021, we overruled these assigned errors and affirmed Marshall's convictions.

{¶ 6} Marshall, through counsel, then filed a timely application for reopening on March 15, 2022, raising four proposed assignments of error, which

was timely opposed by the state. Marshall filed a motion for leave to file a reply brief instanter, which was granted.

## Law and Analysis

### Standard for Reopening

**{¶ 7}** App.R. 26(B) provides a mechanism whereby an appellant in an appeal from a criminal conviction can assert claims of ineffective assistance of appellate counsel. App.R. 26(B)(1). "Claims of ineffective assistance of appellate counsel under App.R. 26(B) are subject to the two-pronged analysis enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292, 185 N.E.3d 1075, ¶ 17. Under this standard, the applicant must demonstrate that "(1) appellate counsel's performance was objectively unreasonable, [*Strickland*] at 687, and (2) there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [*Strickland*] at 694." *Id.* at ¶ 18, citing *Smith v. Robbins*, 528 U.S. 259, 285-286, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* quoting *Strickland* at 694.

**{¶ 8}** The application must include, among other things, "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation[.]" App.R. 26(B)(2)(c).

The application for reopening "shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). The burden is on the applicant to demonstrate a "genuine issue" as to whether there is a "colorable claim" of ineffective assistance of appellate counsel.

*Leyh* at ¶ 21, citing *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998).

[T]he two-stage procedure prescribed by App.R. 26(B) requires that the applicant seeking permission to reopen his direct appeal show at the first stage that there is at least a genuine issue—that is, legitimate grounds—to support the claim that the applicant was deprived of the effective assistance of counsel on appeal. See App.R. 26(B)(5). If that showing is made and the application is granted, the applicant must then establish at the second stage the merits of both the direct appeal and the claim for ineffective assistance of appellate counsel. See App.R. 26(B)(9).

*Id.* at ¶ 25.

### Ineffective Assistance of Trial Counsel – Incarceration

**{¶ 9}** Ineffective assistance of trial counsel is judged using the *Strickland* standard set forth above. In order to prevail, an appellant must show that counsel's performance was deficient, and that deficient performance resulted in prejudice (i.e., a reasonable probability that the outcome would have been different). *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107, citing *Strickland* at 687.

**{¶ 10}** Marshall first claims trial counsel was ineffective when counsel failed to object, seek a limiting instruction, or move for a mistrial when a witness for the defense testified that Marshall had been incarcerated for a time in Texas. Marshall's wife, T.M., testified on his behalf. On direct examination, she testified that Marshall had lived with her since June 8, 2009. On cross-examination, the state sought to

clarify whether Marshall lived with T.M. the entire period she stated. T.M. admitted that Marshall did not live with her during the time he was incarcerated in Texas. Marshall cites to her testimony where she says the word "incarcerated" five times:

> T.M.: At that point, June 8th is when Juanito moved in with me and my kids. We talked about my expectations of living there. We talked about rekindling what we had back in the past and that's where we started from.
>
> Prosecutor: You're aware that [T.T.] was his fiancé prior to June 8th of 2009 are you, or are you not?
>
> T.M.: I'm not aware of the fiancé part.
>
> Prosecutor: So you didn't know they were —
>
> T.M.: They were together. I didn't know they had gotten engaged.
>
> Prosecutor: But it's your testimony that once he moved in when you say June 8th of 2009, shortly after that you start[ed] a relationship with him?
>
> T.M.: Yes.
>
> Prosecutor: And have you been in a relationship with him consistently since that point?
>
> T.M.: Yes.
>
> Prosecutor: Now, you testified when [appellant's trial counsel] was asking you questions that he has lived with you in that home since June 8th of 2009, right?
>
> T.M.: Yes.
>
> Prosecutor: And that's not true, is it?
>
> T.M.: That is true.
>
> Prosecutor: He was in Texas for a period of time, wasn't he?

T.M.: Yes. He was incarcerated, but —

Prosecutor: For a number of — he wasn't living with you for a number of years, isn't that right?

T.M.: Once he was incarcerated?

Prosecutor: There was a number of years where he was not living with you at that address, isn't that right?

T.M.: That was his address, but he was incarcerated for those four years, yes.

Prosecutor: So when he says — I'm sorry. When you testified on direct examination that he was living with you at that address consistently since June 8th of 2009 that was not true, was it?

T.M.: It was true. That was his address. He was incarcerated at the time.
Prosecutor: I don't think the question asked to you is what his address was. The question was: Was he living with you and you told [appellant's trial counsel] "Yes."

T.M.: I did tell [appellant's trial counsel] "Yes," and I will say I did say "Yes," but I didn't know we could bring up his incarceration.

Prosecutor: So, again, it's not true because he was in Texas for four years. We can agree on that?

T.M.: We can agree on that.

(Tr. 862-864.)

**{¶ 11}** Prior to trial, defense counsel filed a motion in limine to exclude evidence of Marshall's incarceration in Texas. The state indicated that it had cautioned its witnesses not to mention Marshall's incarceration but only that he had been in Texas. (Tr. 14-15.) This was necessary because Marshall's trip to Texas and subsequent incarceration occurred around the time of the events relevant to trial

and the witnesses used these events as a touchstone to remember when things occurred. (Tr. 15.)

**{¶ 12}** None of the questions asked by the state sought any information about Marshall's incarceration or inquired about that incarceration. In fact, the transcript demonstrates that when T.M. initially stated the word incarceration, the prosecutor cut off her response and rephrased the question. However, trial counsel did not raise an objection, seek a curative instruction, or request a mistrial because of this testimony.

**{¶ 13}** First, "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140, citing *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006). "Not objecting to testimony is a reasonable trial strategy that counsel may use to avoid attracting a jury's attention to a matter." *State v. Stoermer*, 2d Dist. Clark No. 2017-CA-93, 2018-Ohio-45 This is generally applicable to improper but brief or fleeting testimony. Here, the questioning continued for some time with the state five times eliciting statements from the witness that Marshall was previously incarcerated.

**{¶ 14}** Further, this testimony constitutes evidence of a past criminal conviction.

> Ohio law prohibits "the introduction of evidence tending to show that a defendant has committed another crime wholly independent of the offense for which he is on trial * * *." *State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969), paragraph one of the syllabus; see, also, *State v. Breedlove*, 26 Ohio St.2d 178, 271 N.E.2d 238 (1971). "This rule is

necessary because the average person is likely to more readily believe that a person is guilty of the crime charged if the person has previously been convicted of a crime." *State v. Pritchard*, 8th Dist. Cuyahoga No. 43216, 1981 Ohio App. LEXIS 13479 (Oct. 1, 1981).

*State v. Jaime*, 8th Dist. Cuyahoga No. 94401, 2010-Ohio-5783, ¶ 30.

Inadmissible evidence about a prior crime is prejudicial, unless the reviewing court finds beyond a reasonable doubt that it did not affect the outcome. *State v. Williams*, 55 Ohio App.3d 212, 563 N.E.2d 346 (1988). Where evidence of past convictions has been improperly admitted, the question is whether, absent the disclosure of the past convictions to the jury, appellant would have been convicted. [*State v.*] *Allen*, 29 Ohio St.3d [53, 506 N.E.2d 199 (1987)], citing *State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus, *vacated in part on other grounds*, 438 U.S. 911, 98 S. Ct. 3135, 57 L.Ed.2d 1155 (1978).

*State v. Greer*, 8th Dist. Cuyahoga No. 92910, 2010-Ohio-1418, ¶ 13. Summarized more recently, "[i]n determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, syllabus. Even where a substantial right is impacted, after excluding the impermissible evidence, when there is overwhelming evidence of guilt remaining, then the admission may be deemed harmless. *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 177, quoting *Morris* at ¶ 32.

{¶ 15} Testimony similar to T.M.'s occurred in *Jaime*. This court found that the references to incarceration, time in a "workhouse," did not violate due process

rights in light of the overwhelming evidence of guilt. *Jaime* at ¶ 32. *Accord State v. Robledo*, 5th Dist. Stark No. 2020 CA 00003, 2020-Ohio-5342.

{¶ 16} This court has already found that Marshall's conviction was supported by overwhelming evidence when addressing his Evid.R. 404(B) argument in the direct appeal. *Marshall*, 8th Dist. Cuyahoga No. 109633, 2021-Ohio-4434, at ¶ 65-66. We did not rely on this testimony in our prior analysis of whether the convictions were supported by overwhelming evidence of guilt. Therefore, we arrive at the same conclusion — that this error was harmless. As such, Marshall has failed to show that appellate counsel was ineffective for not advancing this proposed assignment of error. This claim does not constitute a colorable claim of ineffective assistance of counsel.

### Admission of Testimony — Delayed Reporting of Rape

{¶ 17} Marshall claims that a social worker, Kirsti Mouncey, was allowed to give what amounts to expert testimony in contravention of a ruling on a motion in limine to exclude her expert testimony related to the delayed reporting of sexual abuse. Marshall claims this was error on the part of the trial judge and appellate counsel was ineffective for not raising the issue on appeal.

{¶ 18} The admission of evidence is generally left to the discretion of the trial judge. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. Unless that discretion is abused, a reviewing court will generally not interfere with a trial court's discretionary evidentiary rulings. *Id.* "We have defined 'abuse of

discretion' as an 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken.'" *Id.*, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶ 19} Evid.R. 701 allows opinion testimony of lay witnesses so long as the testimony "is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." This is in contrast to an expert witness under Evid.R. 702, where the testimony "either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons * * *."

{¶ 20} During statements by counsel after the voir dire of Mouncey, defense counsel stated, "Many of the cases that I have read regarding this subject matter talk about the opportunity to explain to jurors in a general sense the sort of behavior that we often times see associated with victims of sexual abuse, but in this instance that's not what we're talking about." (Tr. 115.) Counsel then distinguished that from the testimony Mouncey intended to offer regarding behavioral issues that the victim was having and a causal connection between them and sexual abuse. (Tr. 116.) The trial court did not allow Mouncey to testify as an expert in relation to that proposed testimony. However, she was still allowed to testify as a lay witness on different subjects.

{¶ 21} In her brief testimony spanning approximately six pages in the transcript, Mouncey testified as to her experiences as a social worker related to

delayed reporting of sexual abuse and the demeanor of victims when relating accounts of past abuse.

{¶ 22} Allowing Mouncey to testify about matters of delayed reporting and the general demeanor of victims that are within her personal experience is consistent with other cases. For instance, the Second District found that testimony of a police officer regarding why juveniles may delay in reporting sexual abuse that was within the officer's experience and personal knowledge was appropriate opinion testimony under Evid.R. 701. *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 111 (2d Dist.). This court has found similar testimony by a social worker to be proper opinion testimony under Evid.R. 701. *State v. Mathis*, 8th Dist. Cuyahoga No. 107365, 2019-Ohio-3654, ¶ 55-65. *See also State v. Sellers*, 11th Dist. Ashtabula No. 2021-A-0016, 2022-Ohio-581, ¶ 31.

{¶ 23} Mouncey was not allowed to testify as an expert to express an opinion about the victim's behavior in this case and whether that was indicative of having been sexually abused. That was the subject of the motion in limine and Daubert hearing. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Consistent with prior cases from this and other courts, Mouncey was allowed to testify as a lay witness about her experience with delayed reporting and the demeanor of reporting victims. The state indicated the difference on the record prior to trial, and the trial court allowed her to testify as a lay witness about her experiences dealing, generally, with delayed reporting of

sexual abuse. (Tr. 346-347, 428-439.) Marshall has not set forth a colorable claim of ineffective assistance for failing to advance this proposed assignment of error.

## Admission of Testimony — Hearsay

{¶ 24} Marshall claims that appellate counsel was ineffective for failing to raise and argue an assignment of error related to the alleged hearsay testimony of a witness, Am.M.

{¶ 25} Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Thus, an out-of-court statement by a witness or victim offered to prove the matters asserted therein is hearsay." *State v. Salti*, 8th Dist. Cuyahoga No. 106834, 2019-Ohio-149, ¶ 75, citing *State v. Tate*, 2d Dist. Montgomery No. 25386, 2013-Ohio-5167. However, a statement "consistent with the declarant's testimony and offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive" is not hearsay where the declarant testifies and is subject to examination concerning the statement. Evid.R. 801(D)(1)(b).

{¶ 26} During opening statements, Marshall's counsel put forth the argument that K.H., during an argument with her mother in 2017, fabricated the allegations against Marshall as a means of hurting her mother. (Tr. 462-463.)

{¶ 27} During Am.M.'s testimony, the prosecutor inquired when and how the witness became aware of allegations against Marshall. Am.M. testified that she first became aware of allegation against her father by K.H. in the summer of 2008 or

2009. (Tr. 696.) The state then asked, "Who told you about these things in the summer of 2008 or 2009?" (Tr. 696.) Am.M. testified that K.H. told her. The prosecutor then asked, "What was it that [K.H.] told you at that time?" (Tr. 697.) There was an objection from defense counsel that resulted in an unrecorded sidebar discussion between counsel. Then, the judge overruled the objection. *Id.* The state was then allowed to elicit testimony from Am.M. about what the victim told her approximately ten years ago: "[K.H.] told me that my dad was touching her. He would take her in her room — his room and they would do stuff in there. * * * [K.H.] said they would touch each other's private parts. They would watch videos. That's about it." (Tr. 698.)

{¶ 28} The sidebar the trial court conducted in relation to these questions was unrecorded. However, a later discussion outside of the presence of the jury likely reflected the sidebar discussion regarding evidence of a prior consistent statement to rebut an allegation of recent fabrication under Evid.R. 801, but it also encompassed other issues. (Tr. 740-743.)

{¶ 29} The state asserts the testimony was not adduced for the truth of the matter asserted, i.e., whether Marshall in fact committed acts of sexual abuse against K.H. The state's claim can be read that this testimony was offered to show that K.H. did not recently fabricate these allegations. This is because part of Marshall's defense strategy at trial, including during opening statements, was that K.H. recently made up the allegations because of relationship problems with her mother.

{¶ 30} This court was recently faced with a factually similar situation. *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132 (8th Dist.). There, a defendant, in opening arguments, attacked the credibility of a victim as having an ulterior motive, and fabricated allegations against the defendant. *Id.* at ¶ 27. This court found that testimony of two witnesses as to what the victim had previously told them was not hearsay based on Evid.R. 801(D)(1)(b). *Id.* at ¶ 28.

{¶ 31} This situation is also factually similar to one before the Fifth District in *State v. Scott*, 5th Dist. Richland No. 11CA80, 2012-Ohio-3482. There, witnesses were allowed to testify that a child victim of sexual abuse had disclosed to them instances of sexual abuse at the hands of a defendant. The *Scott* Court found that the testimony was admissible under Evid.R. 801(D)(1)(b) to rebut allegations of recent fabrication. *Id.* at ¶ 38, citing *State v. Crawford*, 5th Dist. Richland No. 07 CA 116, 2008-Ohio-6260, ¶ 65. *Accord State v. Abdussatar*, 8th Dist. Cuyahoga No. 86406, 2006-Ohio-803, *State v. Johnson*, 2d Dist. Montgomery No. 15253, 1996 Ohio App. LEXIS 1679 (Apr. 26, 1996), *State v. Hoskins*, 2d Dist. Clark No. 94-CA-42, 1995 Ohio App. LEXIS 2899 (Jun. 28, 1995).

{¶ 32} Courts have also held in similar situations that "where a declarant is examined on the same matters as contained in an impermissible hearsay statement and where the testimony is essentially cumulative, the admission of any such hearsay statement is harmless." *State v. Gutierrez*, 3d Dist. Hancock No. 5-10-14, 2011-Ohio-3126, ¶ 50, citing *State v. Tomlinson*, 33 Ohio App.3d 278, 281, 515

N.E.2d 963, (12th Dist.1986). *Accord State v. Shropshire*, 2017-Ohio-8308, 99

N.E.3d 980, ¶ 26 (8th Dist.) In *Gutierrez*, the victim

> testified at trial and was available for cross-examination. She testified
> as to the same acts that she had told her mother about on the morning
> of the disclosure and that she later disclosed to her therapist, who also
> testified about the sexual abuse. Even if the mother's testimony
> concerning [the victim's] statements were hearsay, they were merely
> cumulative of evidence that was before the jury.

*Id.* The court went on to hold that "admission of these statements would be

harmless error. We do not find that, but for their admission, there was a reasonable

probability that the outcome of trial would have been different." *Id.*

{¶ 33} Here, Am.M. testified that she first learned of allegations of sexual

abuse of K.H. by Marshall in the summer of 2008 or 2009. Marshall's argument

that this testimony constitutes hearsay is incorrect. This testimony was properly

admitted and not hearsay because it was testimony used to rebut allegations that

K.H. had recently fabricated instances of sexual abuse. Therefore, Marshall has not

advanced a colorable claim of ineffective assistance of appellate counsel regarding

this proposed assignment of error.

### Prosecutorial Misconduct and Improper Closing Arguments

{¶ 34} Finally, Marshall claims that appellate counsel was ineffective for not

arguing that the prosecutor committed misconduct during closing arguments.

> In general, a prosecutor has considerable latitude in his closing
> argument. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984).
> "The state is largely free to comment on 'what the evidence has shown
> and what reasonable inferences may be drawn therefrom.'" [*Id.,*
> quoting] *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).
> The test for prosecutorial misconduct during closing argument is

whether the remarks made by the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the accused. *State v. White*, 82 Ohio St.3d 16, 22, 693 N.E.2d 772 (1998). For this determination, an appellate court should consider the nature of the remarks, whether an objection was made by counsel, whether corrective instructions were given by the court, and the strength of the evidence against the defendant. *State v. Braxton*, 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (8th Dist.1995). Additionally, "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

*State v. Harris*, 2017-Ohio-2751, 90 N.E.3d 342, ¶ 84 (8th Dist.)

{¶ 35} Objections were not raised to these statements at the time they were made. Therefore, if they were raised by appellate counsel under the proposed assignment of error raised in the application, they would be reviewed for plain error. *State v. Pate*, 8th Dist. Cuyahoga No. 95382, 2011-Ohio-1692, ¶ 21, citing *State v. Owens*, 51 Ohio App.2d 132, 146, 366 N.E.2d 1367 (9th Dist.1975). Under plain error as set forth in Crim.R. 52(B), plain error should only be found under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 36} Marshall argues several instances of prosecutorial misconduct during closing arguments that have to do with misstating the evidence or making claims that were not in evidence.

{¶ 37} Marshall first claims that the prosecutor misstated Am.M.'s testimony when the prosecutor stated that "Am.M. saw her dad in 2009 take [K.H.] into his bedroom, and lock the door, and close the door." (Tr. 980.) Am.M. did not testify

that Marshall locked the door. She testified that "they" closed the door. (Tr. 703.) However, K.H. did testify that Marshall locked the door. The prosecutor is allowed latitude to make reasonable inferences that may be drawn from the testimony adduced at trial. *Lott*, 51 Ohio St.3d at 165, 555 N.E.2d 293. So, while Am.M. did not testify that she saw Marshall lock the door, K.H. did testify that this occurred. We find that this misstatement was still supported by other testimony in the record, even if Am.M. did not testify as such.

{¶ 38} Next, Marshall argues the prosecutor committed misconduct when commenting on testimony that was stricken. The prosecutor stated, "In 2009 after the first incident when [Marshall exposed his penis he told [C.E.], and [*T.T.*] *overheard what happened.*" (Emphasis added.) (Tr. 979.) Marshall argues the emphasized statement was improper. The state attempted to elicit this testimony from K.H., but it was stricken after Marshall objected. (Tr. 501-502.) However, K.H. did testify without objection that she told her mother what had happened the day after it occurred. The second part of this statement, that T.T. overheard, is supported by evidence in the record. K.H. later testified on re-direct that T.T. overheard the conversation on the phone. K.H. testified that when she told her mother about the incident, K.H. heard T.T. say something in the background on the phone. (Tr. 663-664.) This testimony was admitted over objection. Therefore, the prosecutor's statement was not improper.

{¶ 39} Marshall also takes issue with the emphasized portion of the prosecutor's statement during closing arguments that "[i]n 2009 [K.H.] saw

[Marshall's] penis when he was sitting at the computer. *This was corroborated by him.*" (Emphasis added.) (Tr. 978-979.) Marshall claims that the testimony by C.E., K.H.'s mother, that supports the emphasized section was stricken. (Tr. 731.) However, C.E. was later able to testify without objection that Marshall confirmed to her the outline of the incident when C.E. talked to him about it. (Tr. 732.) T.T. also testified that Marshall said that K.H. had seen his penis when he was sitting at the computer. (Tr. 754.) Therefore, this statement by the prosecutor during closing arguments does not constitute misconduct.

{¶ 40} Marshall also claims the following statement was improper: "You saw Am.M. testify. You heard what her testifying against her father has done to her relationship with the rest of her family. She's basically persona non grata to her family because she came in and told you the truth." (Tr. 949.) Marshall argues that the trial court would not allow Am.M. to testify about the impact her testimony had on her relationship with her family. (Tr. 703-704.) It is true that testimony was not allowed. However, T.M., Marshall's wife, testified about Am.M.'s decision to talk to police and the impact that has had on Am.M.'s relationship with her family. T.M. testified that many members of Am.M's family no longer speak to Am.M. (Tr. 872-873.) The prosecutor's statement is a reasonable inference that can be derived from testimony in the record.

{¶ 41} Marshall also claims that the prosecutor commented on the Evid.R. 404(B) evidence that was allowed by the trial court, but that we subsequently found was improperly admitted. It is not prosecutorial misconduct to

comment on evidence that was properly adduced at trial, even if that evidence was later deemed improperly admitted. *State v. Moore*, 8th Dist. Cuyahoga No. 93042, 2010-Ohio-518, ¶ 31 (holding that the state may comment on properly admitted evidence even where that evidence is argued to have been improperly admitted); *State v. Whitfield*, 2d Dist. Montgomery No. 22432, ¶ 12 ("A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom.").

{¶ 42} Marshall's allegations of prosecutorial misconduct do not demonstrate a reasonable probability that had appellate counsel raised this issue in the direct appeal that there would have been a different outcome. In all, Marshall has identified a single misstatement of testimony that was not directly supported by evidence admitted at trial. The comment summarizing Am.M's testimony as including a claim that she testified that Marshall locked the door was a misstatement of her testimony. This isolated statement was still supported by other evidence, just not Am.M's testimony. In the overall context of closing arguments, we find that this isolated statement did not prejudicially affect a substantial right of Marshall's. There is no probability that this single comment "'"so infected the trial with unfairness as to make the resulting convictions a denial of due process."'" *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 115, quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Marshall has not advanced a colorable claim of ineffective assistance of

appellate counsel regarding prosecutorial misconduct.  The same is true of the other proposed assignments of error.  Therefore, Marshall has failed to advance grounds sufficient to reopen his appeal.

**{¶ 43}** Application denied.


_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR